IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 16-cr-00192-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

BRANDON LADRAYE NELSON,

    Defendant.
_____

**REPORTER'S TRANSCRIPT**
(Sentencing Hearing: Order)
_____

    Proceedings before the HONORABLE MARCIA S. KRIEGER, Judge, United States District Court for the District of Colorado, commencing at 9:02 a.m., on the 31st day of October, 2016, in Courtroom 901A, United States Courthouse, Denver, Colorado.

**A P P E A R A N C E S**

    BETH GIBSON, Assistant U.S. Attorney, 1225 17th Street, Suite 700, Denver, Colorado, 80202, appearing for the Government.

    NATALIE STRICKLIN, Assistant Federal Public Defender, 633 17th Street, 10th Floor, Denver, Colorado, 80202, appearing for the Defendant.

THERESE LINDBLOM, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

1         (The following proceedings were had and entered of
2    record after the Court heard the arguments of counsel and
3    statement of defendant:)
4         *THE COURT:*  Thank you.
5         I'll announce the sentence that I intend to impose.
6    And, of course, counsel, you'll have a final opportunity to
7    make any objection before judgment is entered.  If you believe
8    that the sentence I've described is premised upon error or it
9    raises an issue that you haven't had an opportunity to address,
10   I invite you to request a continuance.
11        Imposition of a sentence in a federal criminal case is
12   governed by a number of statutes.  The umbrella statute is
13   18 U.S.C. Section 3553.  In imposing sentence in this case, as
14   in all cases, the Court must consider the objectives and the
15   factors that are set forth in that statute.  The statute
16   requires that the sentence be sufficient but not greater than
17   necessary to satisfy particular objectives:  The sentence must
18   reflect the seriousness of the offense; promote respect for the
19   law; provide just punishment; adequately deter criminal
20   conduct; protect the public from further crime by the
21   defendant; and provide the defendant with needed educational or
22   vocational training, medical care, or other correctional
23   treatment in the most effective manner.
24        To fashion a sentence that meets these objectives, the
25   statute directs the Court to consider the nature and

1   circumstances of the offense; the history and characteristics
2   of the defendant; the kinds of sentences that are available;
3   the sentence prescribed by the federal sentencing guidelines;
4   the need to avoid unwarranted sentence disparities among
5   defendants with similar records found guilty of similar
6   conduct; and in the appropriate case, the need for restitution.
7           Now, at the beginning of this hearing I noted the
8   documents that I had studied in preparing for the hearing, I
9   confirmed with counsel that they and the defendant had had an
10  opportunity to consider all of these documents, and I asked
11  whether there were any additional documents to be considered.
12  There were none.
13          There were no disputes as to the factual contents of
14  the presentence report and its addenda, there were no disputes
15  as to the calculation of the sentencing range under the federal
16  sentencing guidelines as set out in the presentence report, and
17  that is where we start.
18          There are two components to calculation of a sentence
19  under the federal sentencing guidelines.  The first is the
20  offense level computation.  And, here, the Base Offense Level
21  for violation of 18 U.S.C. Section 922 is set by Section 2K2.1
22  of the guidelines.  The base offense level is 20.  Then the
23  offense level is reduced by three levels due to Mr. Nelson's
24  acceptance of responsibility.  And that's the maximum reduction
25  under the federal sentencing guidelines.  That's because he has

1  satisfied the provisions of Section 3E1.1(a) and (b).  So this
2  results in a Total Offense Level of 17.
3         Now, the second component in the calculation under the
4  guidelines is criminal history.  Criminal history involves an
5  assignment of criminal history points based upon the age and
6  the nature of the conviction.  The Court also takes into
7  account the nature of those convictions in looking at the
8  history and characteristics of the defendant when we look at
9  whether a guideline or non-guideline sentence should be
10 imposed.
11        Criminal history here begins in 2005, when Mr. Nelson
12 was 16.  He was convicted of theft, a felony conviction; but he
13 was a juvenile, therefore, no points are assigned to that
14 conviction.  At age 17, in 2006, he was convicted of a second
15 felony, possession of a Schedule II controlled substance.
16 Again, because he was a juvenile, no points are assigned.  A
17 third conviction at age 17, another felony, possession of a
18 Schedule II controlled substance.  Again, because he was a
19 juvenile, no points are assigned.
20        His adult convictions include traffic convictions;
21 those are not handled through the juvenile system.  And he has
22 two of those at age 17, but no points are assigned.  But when
23 he turned 18, in 2007, he was convicted of refusing an order of
24 a law enforcement officer, for which 2 points are assigned.  He
25 was sentenced to one year of probation and anger --

1   participation in an anger management program and monitored
2   sobriety.  His probation was revoked, and 90 days of jail was
3   imposed.  It was revoked again in 2008, and 100 days of jail
4   was imposed.  It was revoked again, and another 90 days of jail
5   was imposed.
6           In 2007, he was convicted at age 18 with driving
7   without a valid license, but no points are assigned to that
8   because it's a traffic violation.  And the same is true for the
9   conviction that same year for driving without a valid license.
10  And he was also convicted that year of being in possession of
11  drug paraphernalia, but no points are assigned for that.  And
12  in 2007, at the same age, he was convicted of possession of
13  marijuana.  For that, 1 criminal history point is assigned.
14          Then in 2007, he was convicted of being in possession
15  of a weapon which he was not entitled to have because he was a
16  previous offender.  That was a felony conviction for which he
17  receives 3 points.  With regard to that conviction, he was
18  initially sentenced to 60 days in jail and three years of
19  probation, but probation was revoked, and he was sentenced to a
20  year in the Department of Corrections with 120 days credit for
21  time served.  He was ultimately paroled, and the sentence was
22  discharged.
23          In 2007, at age 19, he was convicted of public
24  consumption of alcohol, but no points are assigned.  And in
25  2008, again, he was convicted of driving under restraint on two

1     occasions, for which no points are assigned.

2            In 2008, at age 19, he was convicted of being in
3     possession of marijuana.  For that, 1 point is assigned.  And
4     in 2008, at age 19, he was again convicted of driving under
5     restraint; but no points were assigned.  In 2008, he was
6     convicted of a fireworks violation.  No points are assigned for
7     that or for the 2008 conviction of interference and obstruction
8     of passage.  In 2008, he was convicted of driving without a
9     valid license, but no points are assigned for that.  He was,
10    however, convicted of driving under restraint, and 1 point is
11    assigned for that conviction.

12           In 2010, at age 21, he was convicted of driving under
13    restraint with no points.  The same in 2011, no points.  The
14    same in 2012, no points.  And in 2012, he was convicted of yet
15    another felony, distribution of a Schedule IV controlled
16    substance.  For this, he receives 1 point.  He entered a plea
17    of guilty, he was sentenced to 24 months of probation and 24
18    hours of community service.  His probation was extended by six
19    months, and it was terminated after successful completion.

20           In 2012, he was, again convicted of driving after his
21    license was revoked.  And in 2014, disturbing the peace, for
22    which he receives 1 criminal history point, as well as a
23    weapon, prohibited use, drunk with a gun, driving under the
24    influence, and driving after revocation prohibited, a habitual
25    traffic offender, for that he receives 1 point.  In that case,

7

1  he entered a plea of guilty.  He was sentenced to two years of
2  probation and one year of jail suspended and 60 hours of
3  community service.  Ultimately, the probation was not completed
4  successfully, and a warrant has been issued with regard to
5  that.
6          The total number of criminal history points is 11.
7  And I note that that reflects -- that criminal history reflects
8  a number of convictions for which no criminal history points
9  are assigned at all.
10         According to the sentencing table and the sentencing
11 guidelines, with a criminal history score of 11, Mr. Nelson is
12 in Criminal History Category V.  That's next to the highest
13 criminal history category in the federal system, and that is at
14 age 28, with many of his convictions receiving no criminal
15 history points.
16         With a Criminal History Category of V and an offense
17 level of 17, the guidelines recommend 46 to 57 months of
18 incarceration, 1 to 3 years of supervised release, he's
19 ineligible for probation, a fine of 10,000 to $95,000, and a
20 special assessment of $100.
21         There is no request for a departure under the
22 guidelines.  The defense makes an argument with regard to a
23 request for a variant sentence and argues that a 36-month term
24 of detention is sufficient but no greater than necessary as
25 required under 18 U.S.C. Section 3553 to meet the sentencing

1   objectives.

2   Let me make a couple of observations. First of all,
3   sentencing is not about whether Mr. Nelson is a good person or
4   a bad person. Everyone in this courtroom if viewed through our
5   worst acts would qualify as a bad person; and, similarly,
6   everyone in this courtroom if viewed solely through our best
7   acts would be considered a good person. What sentencing is
8   about is about being accountable for behavior, for conduct that
9   is illegal.

10   What I observe here is that Mr. Nelson has many good
11   qualities, and he makes good decisions on occasion, and he
12   makes bad decisions on occasion. But he's not fully
13   accountable, even when he says he takes responsibility. What
14   he said to me is, I did it. That's not full responsibility.
15   Full responsibility is the internalization of, I will never do
16   it again, and I didn't hear that.

17   Now, the defense argues that the Court should take
18   into account the presence of Mr. Nelson's very supportive
19   family.

20   And I thank you, members of his family, for being so
21   supportive.

22   Mr. Nelson, I suggest you appreciate that.

23   *THE DEFENDANT:* Yes, ma'am.

24   *THE COURT:* And the reason I say that is because,
25   having your family here doesn't affect the sentence I'm going

1  to impose.  This family was supportive of you over your lengthy
2  and extensive criminal history.  So it makes no difference to
3  me in imposing sentence that they are here today, because it
4  made no difference to you that they were supporting you when
5  you made bad decisions.
6         The third thing that I observe here is that the
7  explanation that Mr. Nelson had a firearm because he was afraid
8  or his family was afraid because of his cousin's death doesn't
9  hang together.  I agree that it is tragic that Terrell Burton
10 was killed in the way he was, and I have no doubt that that was
11 a trauma to Mr. Nelson and to his family, but driving around
12 with a loaded weapon on the front seat of your car has nothing
13 to do with that.  If you really were concerned about protecting
14 your family, then the firearm would be where your family was,
15 not on the front seat of the car where you were.  And the fact
16 that it was a weapon that had been fired moments before you
17 were stopped, whether it was by you or by someone else, doesn't
18 support the story that it was there to protect your family.
19         This criminal history reflects a repeated disrespect
20 for the law and a repeated resort to firearms, for whatever
21 reason.  And it is not a criminal record that was earned
22 easily; you had to work to do this.
23         Bottom line here is, looking at the nature and
24 circumstances of this offense and the history and
25 characteristics of the defendant, I see a young man who could

1  continue to be a loving father and could become a role model,
2  but he's not there yet; and that's because he has not yet taken
3  full responsibility for the impact of his actions on his
4  family, on himself, and on the community at large.  It is for
5  that reason that this offense is serious, it undermines respect
6  for the law, and it requires a guideline sentence punishment.
7        In order to deter Mr. Nelson's future criminal conduct
8  and those who might look at his conduct for inspiration, I
9  believe a mid-guideline range sentence, as recommended by the
10 probation office and also by the Government, is appropriate.  I
11 deny the request for a downward variant sentence.  I intend to
12 impose a sentence of 51 months of incarceration, followed by
13 three years of supervised release.
14       No one has addressed the recommended conditions of
15 supervised release.
16       *MS. GIBSON:*  Your Honor, in my sentencing position,
17 the Government requests that based on the history here, and I
18 believe the probation office also recommended, a search
19 condition.
20       *THE COURT:*  Yeah, I wasn't thinking just of the search
21 condition.  I think the probation office has also recommended
22 mental health treatment and also recommended drug treatment.  I
23 have heard nothing from the defense with regard to any of these
24 three conditions, but I intend to impose all three, the search
25 condition, mandatory drug assessment and treatment, and

1  mandatory mental health assessment and, if warranted, mental
2  health treatment.
3         I find the defendant lacks the ability to pay a fine,
4  but the statutes require that he pay a special assessment of
5  $100.
6         Is there any need for clarification, further
7  explanation, objection, or request for a continuance?
8         *MS. GIBSON:*  No, Your Honor.
9         *MS. STRICKLIN:*  Your Honor, the condition as
10 recommended by the probation department is that Mr. Nelson
11 participate in cognitive behavioral treatment.  Your Honor said
12 "mental health treatment."  My understanding is that those
13 are --
14        *THE COURT:*  They are.
15        *MS. STRICKLIN:*  -- different.  I just wanted to make
16 sure that it's mental health treatment that is being --
17        *THE COURT:*  That's what I said.
18        *MS. STRICKLIN:*  Thank you.
19        *THE COURT:*  Uh-huh.
20        Then based upon not findings made by the Court in
21 application of 18 U.S.C. Section 3553 and the sentencing
22 guidelines, pursuant to the Sentencing Reform Act of 1984, it
23 is the judgment of the Court that the defendant, Brandon
24 Ladraye Nelson, be committed to the Bureau of Prisons to be
25 imprisoned for a term of 51 months.

1       Upon release from imprisonment, he will be placed on
2  supervised release for a term of three years.  Within 72 hours
3  of release from the custody of the Bureau of Prisons, he'll
4  report in person to the probation office in the district to
5  which he is released.
6       While on supervised release, he will not commit
7  another federal, state, or local crime; he will not possess a
8  firearm as defined in 18 U.S.C. Section 921; and he will comply
9  with the standard conditions that have been adopted by this
10 court.
11      And let me explain, Mr. Nelson, that will prohibit you
12 from using marijuana.  Even though other people in Colorado can
13 use marijuana, you will not be able to.
14      *THE DEFENDANT:*  Yes, ma'am.
15      *THE COURT:*  You will not unlawfully possess any
16 controlled substance, including marijuana; and you'll refrain
17 from the unlawful use of all controlled substances, including
18 marijuana.  You'll submit to at least one drug test within
19 15 days of placement on supervision and two periodic tests
20 thereafter.
21      In addition, I believe there are three special
22 conditions that should be imposed because they are reasonably
23 related to the factors enumerated in 18 U.S.C. Section 3553(a)
24 and 3563(b).
25      First, you will participate in and successfully

 1   complete a program of testing and treatment for substance abuse
 2   as approved by the probation officer until such time as you are
 3   released from the program by the probation officer.  You will
 4   abstain from the use of all alcohol and other intoxicants
 5   during the course of treatment.  And to the extent you're able
 6   to and directed to, you'll pay for the cost of treatment.
 7           Let me pause here for a moment.  That means no
 8   marijuana, and it means no alcohol.
 9           Second, you will participate in assessment and, if
10   appropriate, treatment for mental health conditions as directed
11   by the probation officer.  And to the extent that you are
12   prescribed medication by a psychiatrist to address mental
13   health issues, you will remain medication compliant.  That
14   means, you will submit to periodic blood tests in order to make
15   sure that a therapeutic level of the medication is maintained
16   at all times.  To the extent that you are able and directed to,
17   you'll pay for the cost of that treatment.
18           You will also submit your person, property, house,
19   residence, papers, computers, as defined in 18 U.S.C. Section
20   1030(e)(1), and other electronic communications or data storage
21   devices or media, as well as any office or workplace, to a
22   search to be conducted by the United States probation officer.
23   Failure to submit to search may be grounds for revocation of
24   supervised release.  You will warn any other occupants of the
25   premises that may be subject to searches pursuant to this

1  condition.

2  An officer may conduct a search pursuant to this
3  condition when reasonable suspicion exists to believe that you
4  have violated the conditions of supervision and that the areas
5  to be searched contain evidence of this violation.  Any search
6  must be conducted at a reasonable time and in a reasonable
7  manner.

8  No fine is imposed for the reasons specified, but you
9  will pay a special assessment of $100, which is due and payable
10 immediately.

11 To the extent you have reserved your right to appeal
12 in your plea agreement, you must exercise that right to appeal
13 within 14 days after entry of judgment or you lose your right
14 to appeal.  Ordinarily, Ms. Stricklin would file that notice of
15 appeal; but if for some reason she's unable or unwilling to do
16 so, you may request and I will direct the Clerk of Court to
17 file a notice of appeal on your behalf.

18 Mr. Nelson, I hope this is the end of your criminal
19 activities, but that decision is entirely up to you.  If you
20 continue to engage in criminal activities such as these, you
21 will continue to be, one, a disappointment to your family, and,
22 two, a very poor role model for your children.  I urge you to
23 think hard on that and make a choice this time never to be in
24 this courtroom or another courtroom ever again as a defendant
25 in a criminal case.  I think you can do it; the question is

1  whether you think you can.

2  Is there any further business to bring before the
3  Court?

4  *MS. GIBSON:* No, Your Honor.

5  *MS. STRICKLIN:* Would the Court please recommend that
6  Mr. Nelson remain in the state of Colorado?

7  *THE COURT:* I will not.

8  *MS. STRICKLIN:* Okay.

9  *THE COURT:* And the reason I will not is several fold.
10 Ms. Stricklin has heard this before.

11 First, there is a mistaken notion that if a judge
12 recommends a location for a defendant, the Bureau of Prisons
13 will follow that recommend.  In my experience and the
14 experience of other judges, that occurs less than half the
15 time.  Therefore, one could argue that it's better not to make
16 a recommendation than it is to make a recommendation.

17 But the second reason is this:  In order for
18 Mr. Nelson to turn his life around, he needs to focus on
19 himself, take every class he can, take every program he can,
20 take every mental health opportunity he can while he is in
21 prison, and that should be paramount for him.  Some of the
22 facilities that have the best programs and the best
23 opportunities are located outside of Colorado.  And while it's
24 sad for him and sad for the family that there is a distance, if
25 Mr. Nelson invests in himself, he will be a greater support to

1   his family and a greater function in society.  So that is why I
2   will not grant that request.
3           Mr. Nelson will be remanded to the custody of the
4   United States Marshal.  The Court expresses its appreciation to
5   counsel, to our probation officer, to our court staff and our
6   marshal staff.  Thank you.
7           We'll stand in recess.
8           (Recess at 9:52 a.m.)
9                        REPORTER'S CERTIFICATE
10
11      I certify that the foregoing is a correct transcript from
    the record of proceedings in the above-entitled matter.
12
13      Dated at Denver, Colorado, this 1st day of November,
    2016.
14
15                                  _____
16                                  Therese Lindblom,CSR,RMR,CRR
17
18
19
20
21
22
23
24
25