APPEAL,TERMED

# U.S. District Court – District of Colorado
## District of Colorado (Denver)
## CRIMINAL DOCKET FOR CASE #: <u>1:16–cr–00192–RBJ</u> All Defendants

Case title: USA v. Nelson
 Magistrate judge case number:  1:16–mj–01079–NYW

Date Filed: 06/07/2016
Date Terminated: 11/04/2016

Assigned to: Judge R. Brooke
Jackson

Appeals court case number:
20–1340 USCA 10th Circuit

**<u>Defendant (1)</u>**

| | | |
|---|---|---|
| **Brandon LAdraye Nelson**<br>*TERMINATED: 11/04/2016*<br>*also known as*<br>Brandon Laeraye Nelson<br>*TERMINATED: 11/04/2016*<br>*also known as*<br>Brandon Lafraye Nelson<br>*TERMINATED: 11/04/2016* | represented by | **Jennifer Lynn Beck**<br>Federal Public Defender's Office–Denver<br>633 17th Street<br>Suite 1000<br>Denver, CO 80202<br>303–294–7002<br>Fax: 303–294–1192<br>Email: <u>jennifer_beck@fd.org</u><br>*TERMINATED: 08/20/2020*<br>*LEAD ATTORNEY*<br>*Designation: Public Defender or Community Defender Appointment* |

**Natalie Girard Stricklin**
Federal Public Defender's Office–Denver
633 17th Street
Suite 1000
Denver, CO 80202
303–294–7002
Fax: 303–294–1192
Email: <u>natalie_stricklin@fd.org</u>
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

**Oliver Dean Sanderford**
Federal Public Defender's Office–Denver
633 17th Street
Suite 1000
Denver, CO 80202
303–294–7002

1

Fax: 303−294−1192
Email: Dean_Sanderford@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community*
*Defender Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:922G Possession of a Firearm / Ammunition by a Prohibited Person (1) | Defendant is sentenced to a term of imprisonment of fifty−one (51) months, three (3) years supervised release, no fine and a special assessment of $100.00. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:922G Possession of a Firearm / Ammunition by a Prohibited Person (2) | Dismissed |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| 18:922G.F Felon in Possession of a Firearm | |

**Plaintiff**

| USA | represented by | **Beth N. Gibson** |
| --- | --- | --- |
| | | U.S. Attorney's Office−Denver 1801 California Street Suite 1600 Denver, CO 80202 303−454−0100 Fax: 303−454−0406 Email: Beth.Gibson@usdoj.gov *TERMINATED: 08/12/2020* *LEAD ATTORNEY* *Designation: Federal Agency Attorney* |
| | | **Martha Ann Paluch** U.S. Attorney's Office−Denver |

2

1801 California Street
Suite 1600
Denver, CO 80202
303–454–0100
Fax: 303–454–0402
Email: Martha.paluch@usdoj.gov
*TERMINATED: 08/12/2020*
*LEAD ATTORNEY*
*Designation: Federal Agency Attorney*

**Alecia Lynne Riewerts**
U.S. Attorney's Office–Denver
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0100
Fax: 303–454–0406
Email: Alecia.Riewerts@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 06/07/2016 | 15 | 5 | INDICTMENT as to Brandon Lafraye Nelson (1) count(s) 1–2. (Attachments: # 1 Criminal Information Sheet) (dkals, ) (Entered: 06/08/2016) |
| 07/26/2016 | 24 | 8 | PLEA AGREEMENT as to Brandon LAdraye Nelson (pglov) (Entered: 07/26/2016) |
| 07/26/2016 | 25 | 16 | STATEMENT IN ADVANCE OF PLEA OF GUILTY by Defendant Brandon LAdraye Nelson (pglov) (Entered: 07/26/2016) |
| 11/04/2016 | 34 | 24 | JUDGMENT as to defendant Brandon LAdraye Nelson. Defendant is sentenced on Count 1 of the Indictment to a term of imprisonment of fifty–one (51) months, three (3) years supervised release, no fine and a special assessment of $100.00.; Count 2 Dismissed by Chief Judge Marcia S. Krieger on 11/4/16. (Attachments: # 1 Sentencing Transcrip) (pglov) (Entered: 11/04/2016) |
| 09/10/2019 | 39 | 46 | Amended Motion to Reduce Sentence pursuant to Rehaif v. United States by Brandon LAdraye Nelson. (Attachments: # 1 Attachment A)(Sanderford, Oliver) (Entered: 09/10/2019) |
| 07/22/2020 | 44 | 79 | MOTION for Order *for Ruling* by Brandon LAdraye Nelson. (Sanderford, Oliver) (Entered: 07/22/2020) |
| 08/11/2020 | 58 | 82 | RESPONSE to Motion by USA as to Brandon LAdraye Nelson re 39 Amended Motion to Reduce Sentence pursuant to Rehaif v. United States (Murphy, James) (Entered: 08/11/2020) |
| 08/12/2020 | 60 | 93 | MINUTE ORDER as to Brandon LAdraye Nelson Re: 39 Amended Motion to Reduce Sentence pursuant to Rehaif v. United States and 44 MOTION for Order for Ruling. ECF No. 39 is denied. As the government has pointed out in its response, the motion was procedurally defaulted. Moreover, the defendant stipulated that he had been convicted of a crime punishable by imprisonment |

| | | | |
|---|---|---|---|
| | | | for a term exceeding one year, ECF No. 24 at 4. Accordingly, it is clear that the defendant did know that he was not allowed to possess firearms because of his previous conviction(s). ECF No. 44 is denied as moot. By Judge R. Brooke Jackson on 8/12/2020. Text Only Entry (rbjsec,) (Entered: 08/12/2020) |
| 08/13/2020 | 62 | 95 | MOTION for Reconsideration *of Order Denying 28 U.S.C. § 2255 Motion* by Brandon LAdraye Nelson. (Sanderford, Oliver) (Entered: 08/13/2020) |
| 08/13/2020 | 63 | 99 | REPLY by Brandon LAdraye Nelson to 58 Response to Motion *to Vacate Conviction and Sentence Under 28 U.S.C.§ 2255* (Sanderford, Oliver) (Entered: 08/13/2020) |
| 09/14/2020 | 66 | 109 | ORDER granting in part and denying in part 62 MOTION for Reconsideration of Order Denying 28 U.S.C. § 2255 Motion as to Brandon LAdraye Nelson (1). Granted to the extent that the Court has reviewed defendant's reply and has reconsidered. Otherwise, denied. The Court reaffirms its denial of defendant's amended motion to reduce sentence, ECF No. 39, for the reasons summarized in the Courts Minute Order, ECF No. 60. By Judge R. Brooke Jackson on 9/14/202. Text Only Entry (rbjsec. ) (Entered: 09/14/2020) |
| 10/01/2020 | 68 | 110 | NOTICE OF APPEAL as to 60 Minute Order,,, Terminate Motions,, 66 Order on Motion for Reconsideration,, by Brandon LAdraye Nelson. (Sanderford, Oliver) (Entered: 10/01/2020) |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  16-cr-00192-MSK

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.   BRANDON LAERAYE NELSON,

      Defendant.

---

**INDICTMENT**
**18 U.S.C. § 922(g)(1)**
**Possession of a Firearm / Ammunition by a Prohibited Person**

---

The Grand Jury charges:

### <u>COUNT 1</u>
18 U.S.C. § 922(g)(1)

On or about May 18, 2016, in the State and District of Colorado, the defendant, BRANDON LAERAYE NELSON, having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm and ammunition in and affecting interstate commerce; in violation of Title 18, United States Code, Section 922(g)(1).

## COUNT 2
18 U.S.C. § 922(g)(1)

On or about May 18, 2016, in the State and District of Colorado, the defendant,

BRANDON LAERAYE NELSON, having been previously convicted of a crime punishable

by imprisonment for a term exceeding one year, did knowingly possess ammunition in and

affecting interstate commerce; in violation of Title 18, United States Code, Section

922(g)(1).


A TRUE BILL:


"Ink signature on file in Clerk's Office"
FOREPERSON


JOHN F. WALSH
United States Attorney


s/*Beth Gibson*
BETH GIBSON
Assistant United States Attorney
United States Attorney's Office
1225 17th Street, Suite 700
Denver, Colorado   80202
Telephone:   (303) 454-0100
Fax:   (303) 454-0406
E-mail:   beth.gibson@usdoj.gov

DEFENDANT                    BRANDON LAERAYE NELSON

YOB:                         1988

ADDRESS:                     Denver, Colorado

COMPLAINT FILED?    __X__ YES    ___ NO

    IF YES, PROVIDE MAGISTRATE CASE NUMBER:  16-mj-01079-NYW
    IF NO, PROCEED TO "OFFENSE" SECTION

HAS DEFENDANT BEEN ARRESTED ON COMPLAINT? _X____ YES   _____ NO

OFFENSE:                     Count 1: Felon in possession of firearm, 18 U.S.C. § 922(g)(1)
                             Count 2: Felon in possession of ammunition, 18 U.S.C. § 922(g)(1)

LOCATION OF OFFENSE:  Denver, Colorado

PENALTY:                     Counts 1 and 2:  10 years of imprisonment, $250,000 fine, or both,
                             3 of supervised release, $100 special assessment

AGENT:                       James Anderson
                             Task Force Officer, ATF

AUTHORIZED BY:               Beth Gibson
                             Assistant United States Attorney

ESTIMATED TIME OF TRIAL:

_X_ five days or less    _____ over five days    _____ other

THE GOVERNMENT:

_X_ will seek detention in this case    _____ will not seek detention in this case

The statutory presumption of detention **is not** applicable to this defendant.

OCDEF CASE:                  _____Yes    __X__ No

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 16-cr-00192-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  BRANDON LARRAYE NELSON,

    Defendant.

---

### PLEA AGREEMENT

---

The United States of America (the government), by and through Beth Gibson,

Assistant United States Attorney for the District of Colorado, and the defendant,

Brandon Larraye Nelson, personally and by counsel, Natalie Stricklin, submit the

following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I.   AGREEMENT

**A.    Defendant's Plea of Guilty:**

The defendant agrees to plead guilty to Count One of the Indictment, charging a

violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm.   The defendant

agrees not to seek a sentence below the guideline range calculated by the parties

below.   The defendant further agrees to waive his appellate rights as set forth in detail

below.

**B.    Government's Obligations:**

In exchange for the defendant's appellate waiver and plea of guilty, the United

States agrees to (1) recommend the Court give the defendant full credit for acceptance

Court's Exhibit

1

of responsibility, unless the defendant engages in conduct that qualifies for the obstruction of justice enhancement under §§ 3C1.1 and 3E1.1, comment (note 4) between the time of the guilty plea and sentencing; (2) move to dismiss Count 2 of the Indictment, also charging a violation of 18 U.S.C. § 922(g)(1) related to ammunition; and (3) request a sentence within the advisory guideline range as finally calculated by the Court.

  **C.**  ***Defendant's Waiver of Appeal:***

  The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 17; or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

  The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the

2

following grounds: (1) the defendant should receive the benefit of an explicitly

retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant

was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced

by prosecutorial misconduct.

### D. Defendant's Abandonment of Right, Title and Claim to Seized Property—Firearms and Ammunition

The defendant hereby agrees that any firearms and/or ammunitions defined in 18

U.S.C. § 921, seized from the defendant and his residence and currently in the custody

and/or control of the Bureau of Alcohol, Tobacco and Firearms, were properly seized

and are subject to forfeiture to the government according to 18 U.S.C § 924(d) and/or

that the firearms and/or ammunitions constitute evidence, contraband, or fruits of the

crime to which the defendant has pleaded guilty. Accordingly, the defendant

relinquishes all claim, title and interest he has in the firearm and the ammunition found

to the United States with the agreement and consent that the Court, upon approval of

this Plea Agreement, hereby directs the Bureau of Alcohol, Tobacco and Firearms, or

any other appropriate agency, to destroy the firearm and/or ammunition forthwith

without further obligation or duty whatsoever owing to the defendant or any other

person. The defendant waives any right he may have had to receive notice or a

hearing with respect to any motion, pleading, order, or any other action that the United

States might take, in its sole discretion, to carry out the abandonment, disposition, and

destruction of the property described above. The defendant freely and voluntarily

relinquishes any and all rights, title, and claim to the firearm and ammunition.

3

## II.   ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of the offense to which this plea is being tendered are as follows:

*First*:   The defendant knowingly possessed a firearm;

*Second*:   The defendant was convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year, before he possessed the firearm; and

*Third*:   Before the defendant possessed the firearm, the firearm had moved across state lines.

Note: The term "firearm" means any weapon that will or is designed to or may readily be converted to expel a projectile by the action of an explosive.   The term also includes the frame or receiver of any such weapon, or any firearm muffler or silencer, or destructive device.

## III.   STATUTORY PENALTIES

The maximum statutory penalty for a violation of 18 U.S.C. § 922(g)(1) is not more than 10 years imprisonment; not more than a $250,000 fine, or both; not more than 3 years supervised release; and a $100 special assessment fee.

## IV.   COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

4

## V.   STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement.   That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree the facts are as follows.   On May 18, 2016, Denver Police responded to a report that shots were fired at 33rd and Holly in the Park Hill neighborhood of Denver.   Eleven minutes later, approximately half a mile away, Officer Marshal saw the defendant in the Elm Park Townhomes.   Officer Marshal approached the defendant, who matched the general description of the person who had fired a gun. The defendant fled on foot.   Officer Marshal saw the defendant pull a gun from his waist and throw it onto the front porch of a residence.   The defendant fell down and was arrested.   Officers immediately went to the porch and recovered the loaded

5

firearm, a Jimenez Arms, model J.A. None, 9mm pistol with serial number 296698. Shell casings that match the firearm were found in the area of 33rd and Holly. After his arrest, the defendant was unstable and was taken to the hospital. While in the cell at jail, the defendant admitted possessing the firearm and denied that he was the person to fire the gun.

Before possessing that firearm in 2016, the defendant was convicted of two felony offenses. In 2011, he was convicted of distribution of a schedule IV controlled substance. Approximately nine years ago, in 2007, he was convicted of possession of a weapon by a previous offender. An expert within the ATF determined the Jimenez Arms firearm and ammunition traveled into Colorado after it was manufactured outside the State.

## VI. ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A.      The parties agree § 2K2.1 applies with a base offense level of 20, based on the defendant's prior conviction for a controlled substance offense.

B.      The parties agree no other offense characteristics will apply.

C.      The defendant should receive a 3-level adjustment for acceptance of responsibility under § 3E1.1.   The resulting offense level therefore would be 17.

D.      The parties understand that the defendant's criminal history computation is tentative.   The criminal history category is determined by the Court based on the defendant's prior convictions.   The parties estimate the defendant's criminal history category is a V.

E.      Assuming the criminal history facts known to the parties are correct, the armed career criminal statute does not apply.

F.      <u>Imprisonment</u>:   The advisory guideline range of imprisonment resulting from an offense level of 17 and the above criminal history category is 46-57 months.   In order to be as accurate as possible, with the criminal history category undetermined at this time, the highest offense level estimated above could conceivably result in a range from 24 months (bottom of Category I) to 63 months (top of Category VI).

G.      Pursuant to guideline § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be $10,000 to $95,000 plus applicable interest and penalties.

H.      Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term shall be at least one year but not more than three years.

## VII.   ENTIRE AGREEMENT

This document, as supplemented, states the parties' entire agreement.   There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied.   In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.


Date: 7-26-16

Brandon Nelson
Brandon Lacraye Nelson
Defendant


Date: 7/26/16

Natalie Stricklin
Attorney for Defendant


Date: 7/26/16

Beth Gibson
Attorney for the United States


8

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 16-cr-00192-MSK

UNITED STATES OF AMERICA,

  Plaintiff,

v.

1.  BRANDON LAZRAYE NELSON, *(signature)*

  Defendant.

---

### STATEMENT BY DEFENDANT IN ADVANCE OF PLEA OF GUILTY

---

  I acknowledge and certify that I have been advised of and understand the following facts and rights, that all representations contained in this document are true and correct, and that my attorney has assisted me as I have reviewed and completed this document.

  1.  The nature of the charge(s) against me has/have been explained to me by my attorney. I have had an opportunity to discuss with my attorney both the nature of the charge(s) and the elements which the government is required to prove.

  2.  I know that when the Court sentences me, the Court will consider many factors. These factors are listed in 18 U.S.C. § 3553 and include (a) the nature and circumstances of the offense and my personal history and characteristics, (b) the need for a sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public, and provide me with needed training, care or correctional treatment in the most effective manner, (c) the kinds of sentences available to the court, (d) the advisory sentencing guidelines

**Court's Exhibit
2**

established by the U.S. Sentencing Commission, (e) the pertinent policy statements of the U.S. Sentencing Commission, (f) the need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct, and (g) the need to provide restitution. No single factor is controlling or determinative. I recognize that it is possible that the Court could, after considering these factors, impose any sentence in my case, including one which is as severe as the maximum term of imprisonment, the maximum fine, full restitution (if applicable), the maximum term of supervised release, and a special assessment, all as set out in paragraph 3 below.

3.      I know that the following penalties may be imposed as a result of my guilty plea(s):

To Count One of the Indictment, charging a violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm.

a.      Imprisonment for a term of not more than 10 years;

b.      A term of supervised release of not more than 3 years, pursuant to 18 U.S.C. § 3583;

c.      A fine of not more than $250,000, pursuant to the statute that I admit I violated and/or the alternative fine schedule set out at 18 U.S.C. § 3571;

d.      Restitution to the victim(s) of my crime(s) of not more than $____, pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664;

e.      A special assessment of $100, pursuant to 18 U.S.C. § 3013;

4.      I know that if I am convicted of more than one count, the sentences imposed may be either concurrent (served at the same time) or consecutive (served

2

separately or back-to-back) unless the statutory penalty for an offense of conviction expressly requires that a sentence be imposed to run consecutively.

5.    I know that in addition to any punishment that the Court may impose, there are collateral consequences to pleading guilty to a crime. These consequences are neither imposed nor controlled by the Court. For example, pleading guilty may result in a loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury. And, if I am not a citizen of the United States, these consequences may include deportation from the United States or indefinite confinement if there is no country to which I may be deported, denial of the right to enter the United States in the future, and denial of citizenship.

6.    I know that if I am given a term of supervised release as a part of my sentence, that supervised release will only begin to run upon my release from custody on all terms of imprisonment imposed by this and any other courts. I understand that any violation of the conditions of that supervised release during its term may lead to an additional prison sentence and additional supervised release being imposed.

7.    I know that there is no parole in the federal system and that I will be required to serve the entire sentence of imprisonment which may be imposed in my case, reduced only by such good time and/or program allowances as may be set by Congress and applied by the Bureau of Prisons.

8.    I know that if a fine or restitution is imposed as a part of my sentence, I will be required to pay interest on any amount in excess of $2,500, unless the fine or

3

restitution is paid in full before the fifteenth day after the date of the judgment or unless interest is waived by the Court.

9.     I know that if a fine or restitution is imposed as a part of my sentence, I will be required to pay it in a timely manner. Failure to do so may trigger monetary penalties, collection efforts by the government, potential revocation of any probation or supervised release, and/or exposure to prosecution for "Criminal Default" under 18 U.S.C. § 3615.

10.     I know that I can be represented by an attorney at every stage of the proceedings in this matter, and I know that, if I cannot afford an attorney, one will be appointed to represent me at no cost or expense to me.

11.     I know that I have a right to plead "not guilty;" and I know that if I do plead "not guilty," I can persist in that plea and demand a trial.

12.     I know that I have a right to and can demand a trial by jury, and I know that if I choose to stand trial:

       a.     I have a right to the assistance of an attorney at every stage of the proceeding;

       b.     I have a right to see and observe the witnesses who testify against me;

       c.     My attorney can cross-examine all witnesses who testify against me;

       d.     I can call and present such relevant witnesses and evidence as I desire, and I can obtain subpoenas to require the attendance and testimony of those witnesses;

       e.     If I cannot afford to pay witness fees and expenses, the government will pay those fees and expenses, including mileage

4

and travel expenses, and including reasonable fees charged by expert witnesses;

f.     I cannot be forced to incriminate myself and I do not have to testify at any trial;

g.     However, I can testify at my trial if I choose to, and I do not have to decide whether or not to testify until after I have heard the government's evidence against me;

h.     If I decide that I do not want to testify at trial, the jury will be told that no guilt or inference adverse to me may be drawn from my decision not to testify;

i.     In order for me to be convicted, the government must prove each and every element of the offense(s) with which I am charged, beyond a reasonable doubt;

j.     In order for me to be convicted, the jury must reach a unanimous verdict of guilty, meaning all jurors must agree that I am guilty; and

k.     If I were to be convicted, I could appeal both my conviction and whatever sentence the Court later imposed, and if I could not afford an appeal, the government would pay the cost of the appeal, including the cost of an appointed attorney.

13.     I know that if I plead guilty, there will not be a trial of any kind.

14.     I know that if I plead guilty, there will be no appellate review of the question of whether or not I am guilty of the offense(s) to which I have pled guilty.

15.     I know that the terms of my plea agreement with the government contain a waiver of my right to appeal or to collaterally attack the sentence. Specifically, I have agreed to waive my appeal under the conditions set forth in the Plea Agreement. Because of this, I know that I cannot seek appellate review of the sentence imposed by the Court in this case, except in the limited circumstances, if any, permitted by my plea agreement.

5

16.     No agreements have been reached and no representations have been made to me as to what the sentence in this case will be, except those which are explicitly detailed in the document entitled "Plea Agreement" which I and the government have signed.  I further understand that any sentencing agreements and stipulations in the document entitled  "Plea Agreement" are binding on the Court only if the parties ask the Court in that document to be so bound pursuant to Rule 11(c)(1)(C) and only if the Court agrees to be so bound when it accepts my guilty plea(s).

17.     The only plea agreement which has been entered into with the government is that which is set out in the document entitled "Plea Agreement" which has been signed by the government and me and which I incorporate herein by reference.

18.     I understand that the Court will make no decision as to what my sentence will be until a Presentence Report has been prepared by the Probation Department and received and reviewed by the Court.

19.     I know that when I enter my plea(s) of guilty, the Court may ask me questions under oath about the offense(s) to which I have pled guilty.  Such questions, if asked of me on the record and in the presence of my attorney, must be answered by me, and if I give false answers, I can be prosecuted for perjury.

20.     I know that I have the right to ask the Court any questions that I have concerning my rights, these proceedings, and my plea(s) to the charge(s).

21.     I am ___27___ years of age.  My education consists of ___11th grade___ I [(can)] [cannot] understand the English language.  (Circle

6

either "can" or "cannot.")  I am not taking any medications which interfere with my ability to understand the proceedings in this matter or which impact or affect my ability to choose whether to plead guilty.

22.     Other than the promises of the government set out in the document entitled "Plea Agreement," no promises and no threats of any sort have been made to me by anyone to induce me or to persuade me to enter my plea(s) in this case.

23.     No one has promised me that I will receive probation, home confinement or any other specific sentence desired by me because of my plea(s) of guilty.

24.     I have had sufficient opportunity to discuss this case and my intended plea(s) of guilty with my attorney.  I do not wish to consult with my attorney any further before I enter my plea(s) of guilty.

25.     I am satisfied with my attorney.  I believe that I have been represented effectively and competently in this case.

26.     My decision to enter the plea(s) of guilty is made after full and careful thought, with the advice of my attorney, and with full understanding of my rights, the facts and circumstances of the case, and the potential consequences of my plea(s) of guilty.  I was not under the influence of any drugs, medication, or intoxicants which affect my decision-making ability when I made the decision to enter my guilty plea(s).  I am not now under the influence of any such drugs, medication or intoxicants.

27.     I want to plead guilty and have no mental reservations about my decision.

28.     Insofar as it shows my conduct, the summary of facts set out in the document entitled "Plea Agreement" is true and correct, except as I have indicated in that document.

29.     I know that I am free to change or delete anything contained in this document and that I am free to list my objections and my disagreements with anything contained in the document entitled "Plea Agreement."  I accept both documents as they are currently drafted.

30.     I wish to plead guilty to the following charge(s):  To Count One of the Indictment, charging a violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm.

Dated this 26 day of _____, 2016.

_Brandon Nelson_
BRANDON LARRAYE NELSON
Defendant

I certify that I have discussed this statement and the document entitled "Plea Agreement" with the defendant.  I certify that I have fully explained the defendant's rights to him or her and have assisted him or her in completing this form.  I believe that the defendant understands his or her rights and these statements.

Dated this 26 day of _____, 2016.

_____
NATALIE G. STRICKLIN
Attorney for Defendant

8

AO 245B    (Rev. 11/14 D/CO) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

District of _____ COLORADO

| UNITED STATES OF AMERICA | JUDGMENT IN A CRIMINAL CASE |
|---|---|

**V.**

BRANDON LADRAYE NELSON
a/k/a Brandon Laeraye Nelson
a/k/a Brandon Lafraye Nelson

Case Number:         16-cr-00192-MSK-1

USM Number:        43578-013

Natalie Girard Stricklin, AFPD
Defendant's Attorney

## THE DEFENDANT:

[X] pleaded guilty to Count      1 of the Indictment

[ ] pleaded nolo contendere to Count(s) _____
which was accepted by the Court.

[ ] was found guilty on Count(s) _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 922(g)(1) | Possession of a Firearm and Ammunition by a Prohibited Person | 5/18/2016 | 1 |

The defendant is sentenced as provided in pages 2 through _____6_____ of this judgment in accordance with the findings and conclusions made in open court, a transcript of which is attached hereto and incorporated herein by this reference. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ] The defendant has been found not guilty on Count(s) _____

[X] Count      2 of the Indictment is dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

October 31, 2016
Date of Imposition of Judgment

*Marcia S. Krieger*

Signature of Judge

Marcia S. Krieger, Chief U.S. District Judge
Name and Title of Judge

November 4, 2016

Date

AO 245B    (Rev. 11/14 D/CO) Judgment in Criminal Case
           Sheet 2 — Imprisonment

DEFENDANT:          BRANDON LADRAYE NELSON
CASE NUMBER:        16-cr-00192-MSK-1

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:
   fifty-one (51) months

☐    The court makes the following recommendations to the Bureau of Prisons:

☒    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

    ☐    at _____    ☐ a.m.  ☐  p.m.    on    _____ .

    ☐    as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐    before 12 p.m. on    _____ .

    ☐    as notified by the United States Marshal.

    ☐    as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on    _____    to    _____

at    _____    ,  with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By    _____
DEPUTY UNITED STATES MARSHAL

AO 245B     (Rev. 11/14 D/CO) Judgment in a Criminal Case
            Sheet 3 — Supervised Release

Judgment—Page     3     of     6

DEFENDANT:         BRANDON LADRAYE NELSON
CASE NUMBER:       16-cr-00192-MSK-1

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of:     three (3) years

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  (Check, if applicable.)

☒ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.  (Check, if applicable.)

☒ The defendant shall cooperate in the collection of DNA as directed by the probation officer.  (Check, if applicable.)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer.  (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence.  (Check, if applicable.)

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician. Except as authorized by court order, the defendant shall not possess, use or sell marijuana or any marijuana derivative (including THC) in any form (including edibles) or for any purpose (including medical purposes). Without the prior permission of the probation officer, the defendant shall not enter any marijuana dispensary or grow facility;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement; and

14) the defendant shall provide access to any requested financial information.

AO 245B    (Rev. 11/14 D/CO) Judgment in a Criminal Case
           Sheet 3C — Supervised Release

DEFENDANT:         BRANDON LADRAYE NELSON
CASE NUMBER:       16-cr-00192-MSK-1

## SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant shall participate in and successfully complete a program of testing and/or treatment for substance abuse, as approved by the probation officer, until such time as the defendant is released from the program by the probation officer. The defendant shall abstain from the use of alcohol or other intoxicants during the course of treatment and shall pay the cost of treatment as directed by the probation officer.

2.  The defendant shall participate in and successfully complete a program of mental health treatment, as approved by the probation officer, until such time as the defendant is released from the program by the probation officer. The defendant shall pay the cost of treatment as directed by the probation officer. The defendant shall remain compliant and shall take all medications that are prescribed by his  treating psychiatrist. The defendant shall cooperate with random blood tests as requested by his treating psychiatrist and/or supervising probation officer to ensure that a therapeutic level of his prescribed medications is maintained. The Court authorizes the probation officer to release psychological reports and/or the presentence report to the treatment agency for continuity of treatment.

3.  The defendant shall submit his person, property, house, residence, papers, [computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media,] or office, to a search conducted by a United States probation officer. Failure to submit to search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

AO 245B    (Rev. 11/14 D/CO) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

DEFENDANT:          BRANDON LADRAYE NELSON
CASE NUMBER:        16-cr-00192-MSK-1

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $  100.000 | $ 0.00 | $ 0.00 |

☐   The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| **TOTALS** | $          0.00 | $          0.00 | |

☐   Restitution amount ordered pursuant to plea agreement  $ _____

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The Court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐   the interest requirement is waived for the   ☐  fine   ☐  restitution.

☐   the interest requirement for the   ☐  fine   ☐  restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 11/14 D/CO) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page ___6___ of ___6___

DEFENDANT:        BRANDON LADRAYE NELSON
CASE NUMBER:      16-cr-00192-MSK-1

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A** ☐ Lump sum payment of $ _____ due immediately, balance due

☐ not later than _____ , or
☐ in accordance ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☒ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The Court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the Court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the Court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following Court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and Court costs.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 16-cr-00192-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

BRANDON LADRAYE NELSON,

    Defendant.

_____

**REPORTER'S TRANSCRIPT**
(Sentencing Hearing:  Order)

_____

    Proceedings before the HONORABLE MARCIA S. KRIEGER, Judge, United States District Court for the District of Colorado, commencing at 9:02 a.m., on the 31st day of October, 2016, in Courtroom 901A, United States Courthouse, Denver, Colorado.

**A P P E A R A N C E S**

    BETH GIBSON, Assistant U.S. Attorney, 1225 17th Street, Suite 700, Denver, Colorado, 80202, appearing for the Government.

    NATALIE STRICKLIN, Assistant Federal Public Defender, 633 17th Street, 10th Floor, Denver, Colorado, 80202, appearing for the Defendant.

THERESE LINDBLOM, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

1          (The following proceedings were had and entered of

2     record after the Court heard the arguments of counsel and

3     statement of defendant:)

4          THE COURT:  Thank you.

5          I'll announce the sentence that I intend to impose.

6     And, of course, counsel, you'll have a final opportunity to

7     make any objection before judgment is entered.  If you believe

8     that the sentence I've described is premised upon error or it

9     raises an issue that you haven't had an opportunity to address,

10    I invite you to request a continuance.

11         Imposition of a sentence in a federal criminal case is

12    governed by a number of statutes.  The umbrella statute is

13    18 U.S.C. Section 3553.  In imposing sentence in this case, as

14    in all cases, the Court must consider the objectives and the

15    factors that are set forth in that statute.  The statute

16    requires that the sentence be sufficient but not greater than

17    necessary to satisfy particular objectives:  The sentence must

18    reflect the seriousness of the offense; promote respect for the

19    law; provide just punishment; adequately deter criminal

20    conduct; protect the public from further crime by the

21    defendant; and provide the defendant with needed educational or

22    vocational training, medical care, or other correctional

23    treatment in the most effective manner.

24         To fashion a sentence that meets these objectives, the

25    statute directs the Court to consider the nature and

1    circumstances of the offense; the history and characteristics

2    of the defendant; the kinds of sentences that are available;

3    the sentence prescribed by the federal sentencing guidelines;

4    the need to avoid unwarranted sentence disparities among

5    defendants with similar records found guilty of similar

6    conduct; and in the appropriate case, the need for restitution.

7         Now, at the beginning of this hearing I noted the

8    documents that I had studied in preparing for the hearing, I

9    confirmed with counsel that they and the defendant had had an

10    opportunity to consider all of these documents, and I asked

11    whether there were any additional documents to be considered.

12    There were none.

13         There were no disputes as to the factual contents of

14    the presentence report and its addenda, there were no disputes

15    as to the calculation of the sentencing range under the federal

16    sentencing guidelines as set out in the presentence report, and

17    that is where we start.

18         There are two components to calculation of a sentence

19    under the federal sentencing guidelines. The first is the

20    offense level computation. And, here, the Base Offense Level

21    for violation of 18 U.S.C. Section 922 is set by Section 2K2.1

22    of the guidelines. The base offense level is 20. Then the

23    offense level is reduced by three levels due to Mr. Nelson's

24    acceptance of responsibility. And that's the maximum reduction

25    under the federal sentencing guidelines. That's because he has

1   satisfied the provisions of Section 3E1.1(a) and (b).  So this

2   results in a Total Offense Level of 17.

3         Now, the second component in the calculation under the

4   guidelines is criminal history.  Criminal history involves an

5   assignment of criminal history points based upon the age and

6   the nature of the conviction.  The Court also takes into

7   account the nature of those convictions in looking at the

8   history and characteristics of the defendant when we look at

9   whether a guideline or non-guideline sentence should be

10  imposed.

11        Criminal history here begins in 2005, when Mr. Nelson

12  was 16.  He was convicted of theft, a felony conviction; but he

13  was a juvenile, therefore, no points are assigned to that

14  conviction.  At age 17, in 2006, he was convicted of a second

15  felony, possession of a Schedule II controlled substance.

16  Again, because he was a juvenile, no points are assigned.  A

17  third conviction at age 17, another felony, possession of a

18  Schedule II controlled substance.  Again, because he was a

19  juvenile, no points are assigned.

20        His adult convictions include traffic convictions;

21  those are not handled through the juvenile system.  And he has

22  two of those at age 17, but no points are assigned.  But when

23  he turned 18, in 2007, he was convicted of refusing an order of

24  a law enforcement officer, for which 2 points are assigned.  He

25  was sentenced to one year of probation and anger --

1    participation in an anger management program and monitored

2    sobriety.  His probation was revoked, and 90 days of jail was

3    imposed.  It was revoked again in 2008, and 100 days of jail

4    was imposed.  It was revoked again, and another 90 days of jail

5    was imposed.

6         In 2007, he was convicted at age 18 with driving

7    without a valid license, but no points are assigned to that

8    because it's a traffic violation.  And the same is true for the

9    conviction that same year for driving without a valid license.

10   And he was also convicted that year of being in possession of

11   drug paraphernalia, but no points are assigned for that.  And

12   in 2007, at the same age, he was convicted of possession of

13   marijuana.  For that, 1 criminal history point is assigned.

14        Then in 2007, he was convicted of being in possession

15   of a weapon which he was not entitled to have because he was a

16   previous offender.  That was a felony conviction for which he

17   receives 3 points.  With regard to that conviction, he was

18   initially sentenced to 60 days in jail and three years of

19   probation, but probation was revoked, and he was sentenced to a

20   year in the Department of Corrections with 120 days credit for

21   time served.  He was ultimately paroled, and the sentence was

22   discharged.

23        In 2007, at age 19, he was convicted of public

24   consumption of alcohol, but no points are assigned.  And in

25   2008, again, he was convicted of driving under restraint on two

1    occasions, for which no points are assigned.

2          In 2008, at age 19, he was convicted of being in

3    possession of marijuana.  For that, 1 point is assigned.  And

4    in 2008, at age 19, he was again convicted of driving under

5    restraint; but no points were assigned.  In 2008, he was

6    convicted of a fireworks violation.  No points are assigned for

7    that or for the 2008 conviction of interference and obstruction

8    of passage.  In 2008, he was convicted of driving without a

9    valid license, but no points are assigned for that.  He was,

10   however, convicted of driving under restraint, and 1 point is

11   assigned for that conviction.

12          In 2010, at age 21, he was convicted of driving under

13   restraint with no points.  The same in 2011, no points.  The

14   same in 2012, no points.  And in 2012, he was convicted of yet

15   another felony, distribution of a Schedule IV controlled

16   substance.  For this, he receives 1 point.  He entered a plea

17   of guilty, he was sentenced to 24 months of probation and 24

18   hours of community service.  His probation was extended by six

19   months, and it was terminated after successful completion.

20          In 2012, he was, again convicted of driving after his

21   license was revoked.  And in 2014, disturbing the peace, for

22   which he receives 1 criminal history point, as well as a

23   weapon, prohibited use, drunk with a gun, driving under the

24   influence, and driving after revocation prohibited, a habitual

25   traffic offender, for that he receives 1 point.  In that case,

1    he entered a plea of guilty.  He was sentenced to two years of

2    probation and one year of jail suspended and 60 hours of

3    community service.  Ultimately, the probation was not completed

4    successfully, and a warrant has been issued with regard to

5    that.

6         The total number of criminal history points is 11.

7    And I note that that reflects -- that criminal history reflects

8    a number of convictions for which no criminal history points

9    are assigned at all.

10         According to the sentencing table and the sentencing

11   guidelines, with a criminal history score of 11, Mr. Nelson is

12   in Criminal History Category V.  That's next to the highest

13   criminal history category in the federal system, and that is at

14   age 28, with many of his convictions receiving no criminal

15   history points.

16         With a Criminal History Category of V and an offense

17   level of 17, the guidelines recommend 46 to 57 months of

18   incarceration, 1 to 3 years of supervised release, he's

19   ineligible for probation, a fine of 10,000 to $95,000, and a

20   special assessment of $100.

21         There is no request for a departure under the

22   guidelines.  The defense makes an argument with regard to a

23   request for a variant sentence and argues that a 36-month term

24   of detention is sufficient but no greater than necessary as

25   required under 18 U.S.C. Section 3553 to meet the sentencing

1    objectives.

2          Let me make a couple of observations.  First of all,

3    sentencing is not about whether Mr. Nelson is a good person or

4    a bad person.  Everyone in this courtroom if viewed through our

5    worst acts would qualify as a bad person; and, similarly,

6    everyone in this courtroom if viewed solely through our best

7    acts would be considered a good person.  What sentencing is

8    about is about being accountable for behavior, for conduct that

9    is illegal.

10         What I observe here is that Mr. Nelson has many good

11   qualities, and he makes good decisions on occasion, and he

12   makes bad decisions on occasion.  But he's not fully

13   accountable, even when he says he takes responsibility.  What

14   he said to me is, I did it.  That's not full responsibility.

15   Full responsibility is the internalization of, I will never do

16   it again, and I didn't hear that.

17         Now, the defense argues that the Court should take

18   into account the presence of Mr. Nelson's very supportive

19   family.

20         And I thank you, members of his family, for being so

21   supportive.

22         Mr. Nelson, I suggest you appreciate that.

23         THE DEFENDANT:  Yes, ma'am.

24         THE COURT:  And the reason I say that is because,

25   having your family here doesn't affect the sentence I'm going

1   to impose.  This family was supportive of you over your lengthy

2   and extensive criminal history.  So it makes no difference to

3   me in imposing sentence that they are here today, because it

4   made no difference to you that they were supporting you when

5   you made bad decisions.

6          The third thing that I observe here is that the

7   explanation that Mr. Nelson had a firearm because he was afraid

8   or his family was afraid because of his cousin's death doesn't

9   hang together.  I agree that it is tragic that Terrell Burton

10  was killed in the way he was, and I have no doubt that that was

11  a trauma to Mr. Nelson and to his family, but driving around

12  with a loaded weapon on the front seat of your car has nothing

13  to do with that.  If you really were concerned about protecting

14  your family, then the firearm would be where your family was,

15  not on the front seat of the car where you were.  And the fact

16  that it was a weapon that had been fired moments before you

17  were stopped, whether it was by you or by someone else, doesn't

18  support the story that it was there to protect your family.

19         This criminal history reflects a repeated disrespect

20  for the law and a repeated resort to firearms, for whatever

21  reason.  And it is not a criminal record that was earned

22  easily; you had to work to do this.

23         Bottom line here is, looking at the nature and

24  circumstances of this offense and the history and

25  characteristics of the defendant, I see a young man who could

 1   continue to be a loving father and could become a role model,

 2   but he's not there yet; and that's because he has not yet taken

 3   full responsibility for the impact of his actions on his

 4   family, on himself, and on the community at large.  It is for

 5   that reason that this offense is serious, it undermines respect

 6   for the law, and it requires a guideline sentence punishment.

 7          In order to deter Mr. Nelson's future criminal conduct

 8   and those who might look at his conduct for inspiration, I

 9   believe a mid-guideline range sentence, as recommended by the

10   probation office and also by the Government, is appropriate.  I

11   deny the request for a downward variant sentence.  I intend to

12   impose a sentence of 51 months of incarceration, followed by

13   three years of supervised release.

14          No one has addressed the recommended conditions of

15   supervised release.

16          *MS. GIBSON:*  Your Honor, in my sentencing position,

17   the Government requests that based on the history here, and I

18   believe the probation office also recommended, a search

19   condition.

20          *THE COURT:*  Yeah, I wasn't thinking just of the search

21   condition.  I think the probation office has also recommended

22   mental health treatment and also recommended drug treatment.  I

23   have heard nothing from the defense with regard to any of these

24   three conditions, but I intend to impose all three, the search

25   condition, mandatory drug assessment and treatment, and

1    mandatory mental health assessment and, if warranted, mental

2    health treatment.

3            I find the defendant lacks the ability to pay a fine,

4    but the statutes require that he pay a special assessment of

5    $100.

6            Is there any need for clarification, further

7    explanation, objection, or request for a continuance?

8            MS. GIBSON:  No, Your Honor.

9            MS. STRICKLIN:  Your Honor, the condition as

10   recommended by the probation department is that Mr. Nelson

11   participate in cognitive behavioral treatment.  Your Honor said

12   "mental health treatment."  My understanding is that those

13   are --

14           THE COURT:  They are.

15           MS. STRICKLIN:  -- different.  I just wanted to make

16   sure that it's mental health treatment that is being --

17           THE COURT:  That's what I said.

18           MS. STRICKLIN:  Thank you.

19           THE COURT:  Uh-huh.

20           Then based upon not findings made by the Court in

21   application of 18 U.S.C. Section 3553 and the sentencing

22   guidelines, pursuant to the Sentencing Reform Act of 1984, it

23   is the judgment of the Court that the defendant, Brandon

24   Ladraye Nelson, be committed to the Bureau of Prisons to be

25   imprisoned for a term of 51 months.

1    Upon release from imprisonment, he will be placed on

2 supervised release for a term of three years.  Within 72 hours

3 of release from the custody of the Bureau of Prisons, he'll

4 report in person to the probation office in the district to

5 which he is released.

6    While on supervised release, he will not commit

7 another federal, state, or local crime; he will not possess a

8 firearm as defined in 18 U.S.C. Section 921; and he will comply

9 with the standard conditions that have been adopted by this

10 court.

11    And let me explain, Mr. Nelson, that will prohibit you

12 from using marijuana.  Even though other people in Colorado can

13 use marijuana, you will not be able to.

14    *THE DEFENDANT:*  Yes, ma'am.

15    *THE COURT:*  You will not unlawfully possess any

16 controlled substance, including marijuana; and you'll refrain

17 from the unlawful use of all controlled substances, including

18 marijuana.  You'll submit to at least one drug test within

19 15 days of placement on supervision and two periodic tests

20 thereafter.

21    In addition, I believe there are three special

22 conditions that should be imposed because they are reasonably

23 related to the factors enumerated in 18 U.S.C. Section 3553(a)

24 and 3563(b).

25    First, you will participate in and successfully

1    complete a program of testing and treatment for substance abuse

2    as approved by the probation officer until such time as you are

3    released from the program by the probation officer.  You will

4    abstain from the use of all alcohol and other intoxicants

5    during the course of treatment.  And to the extent you're able

6    to and directed to, you'll pay for the cost of treatment.

7         Let me pause here for a moment.  That means no

8    marijuana, and it means no alcohol.

9         Second, you will participate in assessment and, if

10   appropriate, treatment for mental health conditions as directed

11   by the probation officer.  And to the extent that you are

12   prescribed medication by a psychiatrist to address mental

13   health issues, you will remain medication compliant.  That

14   means, you will submit to periodic blood tests in order to make

15   sure that a therapeutic level of the medication is maintained

16   at all times.  To the extent that you are able and directed to,

17   you'll pay for the cost of that treatment.

18        You will also submit your person, property, house,

19   residence, papers, computers, as defined in 18 U.S.C. Section

20   1030(e)(1), and other electronic communications or data storage

21   devices or media, as well as any office or workplace, to a

22   search to be conducted by the United States probation officer.

23   Failure to submit to search may be grounds for revocation of

24   supervised release.  You will warn any other occupants of the

25   premises that may be subject to searches pursuant to this

1    condition.

2           An officer may conduct a search pursuant to this

3    condition when reasonable suspicion exists to believe that you

4    have violated the conditions of supervision and that the areas

5    to be searched contain evidence of this violation.  Any search

6    must be conducted at a reasonable time and in a reasonable

7    manner.

8           No fine is imposed for the reasons specified, but you

9    will pay a special assessment of $100, which is due and payable

10   immediately.

11          To the extent you have reserved your right to appeal

12   in your plea agreement, you must exercise that right to appeal

13   within 14 days after entry of judgment or you lose your right

14   to appeal.  Ordinarily, Ms. Stricklin would file that notice of

15   appeal; but if for some reason she's unable or unwilling to do

16   so, you may request and I will direct the Clerk of Court to

17   file a notice of appeal on your behalf.

18          Mr. Nelson, I hope this is the end of your criminal

19   activities, but that decision is entirely up to you.  If you

20   continue to engage in criminal activities such as these, you

21   will continue to be, one, a disappointment to your family, and,

22   two, a very poor role model for your children.  I urge you to

23   think hard on that and make a choice this time never to be in

24   this courtroom or another courtroom ever again as a defendant

25   in a criminal case.  I think you can do it; the question is

1    whether you think you can.

2            Is there any further business to bring before the

3    Court?

4            MS. GIBSON:  No, Your Honor.

5            MS. STRICKLIN:  Would the Court please recommend that

6    Mr. Nelson remain in the state of Colorado?

7            THE COURT:  I will not.

8            MS. STRICKLIN:  Okay.

9            THE COURT:  And the reason I will not is several fold.

10   Ms. Stricklin has heard this before.

11           First, there is a mistaken notion that if a judge

12   recommends a location for a defendant, the Bureau of Prisons

13   will follow that recommend.  In my experience and the

14   experience of other judges, that occurs less than half the

15   time.  Therefore, one could argue that it's better not to make

16   a recommendation than it is to make a recommendation.

17           But the second reason is this:  In order for

18   Mr. Nelson to turn his life around, he needs to focus on

19   himself, take every class he can, take every program he can,

20   take every mental health opportunity he can while he is in

21   prison, and that should be paramount for him.  Some of the

22   facilities that have the best programs and the best

23   opportunities are located outside of Colorado.  And while it's

24   sad for him and sad for the family that there is a distance, if

25   Mr. Nelson invests in himself, he will be a greater support to

1   his family and a greater function in society.  So that is why I

2   will not grant that request.

3          Mr. Nelson will be remanded to the custody of the

4   United States Marshal.  The Court expresses its appreciation to

5   counsel, to our probation officer, to our court staff and our

6   marshal staff.  Thank you.

7          We'll stand in recess.

8          (Recess at 9:52 a.m.)

9                    REPORTER'S CERTIFICATE

10

11      I certify that the foregoing is a correct transcript from
    the record of proceedings in the above-entitled matter.

12

13      Dated at Denver, Colorado, this 1st day of November,
    2016.

14

15                    _____

16                    Therese Lindblom,CSR,RMR,CRR

17

18

19

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 16-cr-00192-MSK-1

UNITED STATES OF AMERICA,

      Plaintiff,

v.

BRANDON LADRAYE NELSON,

      Defendant.

---

## AMENDED
## MOTION TO VACATE CONVICTION AND SENTENCE UNDER 28 U.S.C. § 2255

---

    Brandon Ladraye Nelson, through counsel, moves to vacate his conviction and sentence because his guilty plea to possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), is constitutionally invalid in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019).

    In *Rehaif*, the Supreme Court overruled longstanding precedent from the Tenth Circuit – and every other circuit to have addressed the issue – concerning the scope of section 922(g). Before *Rehaif*, the government could secure a felon-in-possession conviction by proving that the defendant knowingly possessed a firearm, even if the defendant did not know that he had been convicted of a felony, defined under the statute as a crime punishable by more than one year in prison. *See United States v. Capps*, 77 F.3d 350, 352-54 (10th Cir. 1996). Now, under *Rehaif*, the government "must show that the defendant knew he possessed the firearm *and also* that he knew he had the relevant status when he possessed it." 139 S. Ct. at 2194 (emphasis added).

    Mr. Nelson pleaded guilty to violating section 922(g) long before *Rehaif* was decided. Unsurprisingly, no one involved in the proceedings correctly understood the elements of the

offense to which Mr. Nelson pled. More to the point, Mr. Nelson was never told during the plea proceedings – either in his plea agreement or at the change of plea hearing – that the crime required proof that he knew he had been convicted of a crime punishable by more than one year at the time he possessed the weapon. *See* Attachment A (change of plea hearing transcript); Doc. 24 (plea agreement). And in the face of adverse Tenth Circuit precedent, there is no basis to presume that Mr. Nelson's lawyer told him about the element either. *See Hicks v. Franklin*, 546 F.3d 1279, 1284 (10th Cir. 2008) (holding such a presumption to be unwarranted unless there is "some factual basis in the record to support it"). Because Mr. Nelson was not advised of the true nature of the charge, his guilty plea is "constitutionally invalid" and cannot stand. *Bousley v. United States*, 523 U.S. 614, 619 (1998).

*Bousley* addressed a situation very similar to Mr. Nelson's. In an earlier case, the Supreme Court had narrowed the scope of a federal criminal statute, and Bousley later filed a section 2255 motion seeking to undo his guilty plea to violating the newly construed provision on the grounds that he had been misinformed of the offense's elements. *Id.* at 616-17. The Court recognized that if Bousley's allegations proved true, his plea would be "constitutionally invalid." *Id.* at 619. And that recognition was grounded in the principle that when pleading guilty, a defendant must receive "real notice of the true nature of the charge against him." *Id.* at 618. This principle, as the Court recognized, is "the first and most universally recognized requirement of due process." *Id.*

Because a guilty plea without notice of the true charges is constitutionally invalid, this type of error can be harmless only if there is record proof that the defendant was made aware of the missing element through other means or if the record otherwise contains an admission by the defendant to that element. That is the lesson of *Henderson v. Morgan*, 426 U.S. 637 (1976). In

2

that case, as here, the defendant was not advised of a mens rea element necessary to commit the charged offense. This rendered the plea invalid despite the fact, assumed by the Court, that the "prosecutor had overwhelming evidence" of the omitted element. *Id.* at 644. The only thing that could have saved the plea was "a substitute for" the defendant's voluntary admission to the element – a stipulation to the element, evidence that the element was otherwise "explain[ed] to" the defendant, or a statement by the defendant "necessarily implying that he had [the requisite] intent." *Id.* at 646. Because the record contained no substitute of this kind, his guilty plea could not survive. *Id.*

The Court reinforced *Henderson* almost thirty years later in *United States v. Dominguez Benitez*, 542 U.S. 74 (2004). That case involved a violation of Rule 11 of the Federal Rules of Criminal Procedure, not a claim that the plea was constitutionally involuntary or unknowing. The case arose under plain error review because the defendant had not objected to the Rule 11 violation in the district court. And the Court held that, in the Rule 11 context, the inquiry concerning prejudice under plain error review was whether there was a "reasonable probability that but for the error, [the defendant] would not have entered the plea." *Id.* at 83. That inquiry properly took into account factors such as "the overall strength of the government's case." *Id.* at 85. But on this point, the Court was careful to distinguish mere Rule 11 violations from "the constitutional question whether a defendant's guilty plea was knowing and voluntary." *Id.* at 85 n.10. The Court made clear that it was not suggesting that a conviction obtained through an involuntary or unknowing plea "could be saved even by overwhelming evidence that the defendant would have pleaded guilty regardless." *Id.*

The Tenth Circuit followed *Henderson* in *Hicks v. Franklin*. As here and in *Henderson*, the error in *Hicks* was the failure to advise the defendant of the mental state necessary to commit

the charged offense.  The Court, following *Henderson*, noted that a "plea cannot support a judgment of guilt unless it is voluntary," and that a plea cannot be considered voluntary unless the defendant received "real notice of the true charges against him."  *Hicks*, 546 F.3d at 1284. Thus, the error could be considered "harmless" only if the record contained "some acknowledgement of facts that might serve, by implication, as" an admission to the omitted element.  *Id.* at 1286.

Here, the record does not contain any admission from Mr. Nelson that he knew he had been convicted of a felony at the time he possessed the gun in this case.  Nor is there any indication in the record that he was aware that a conviction under § 922(g) required such proof. This is of course unsurprising because at the time of his plea, no one thought that § 922(g) contained that element.  But it does, and because Mr. Nelson entered his plea without knowledge of the element's existence, his plea is constitutionally invalid and must be vacated.

For these reasons, Mr. Nelson requests that this Court vacate his conviction for violating § 922(g)(1).

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

/s/ Dean Sanderford
DEAN SANDERFORD
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, Colorado  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Email:  Dean_Sanderford@fd.org
Attorney for Defendant

4

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2019, I electronically filed the foregoing ***AMENDED Motion to Vacate Conviction and Sentence Under 28 U.S.C. § 2255*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email address:

Beth Gibson, Assistant U.S. Attorney
Email: beth.gibson@usdoj.gov

/s/ Dean Sanderford
DEAN SANDERFORD
Assistant Federal Public Defender
Attorney for Defendant

5

*UNITED STATES v. NELSON*

U.S. District Court
District of Colorado
Case No. 16-cr-00192-MSK

---

**ATTACHMENT A**

**Change of Plea Hearing Transcript**

```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLORADO
 2
   Criminal Action No. 16-cr-00192-MSK
 3
   UNITED STATES OF AMERICA,
 4
        Plaintiff,
 5
   vs.
 6
   BRANDON LADRAYE NELSON,
 7
        Defendant.
 8  _____
```

## 9 **REPORTER'S TRANSCRIPT**
CHANGE OF PLEA

```
10  _____
```

11     Proceedings before the HONORABLE MARCIA S. KRIEGER,

12  Judge, United States District Court for the District of

13  Colorado, commencing at 2:37 p.m., on the 26th day of July,

14  2016, in Courtroom A901, United States Courthouse, Denver,

15  Colorado.

16                    **A P P E A R A N C E S**

17     BETH GIBSON, Assistant U.S. Attorney, 1801 California

18  Street, Suite 1600, Denver, Colorado, 80202, appearing for the

19  Government.

20     NATALIE STRICKLIN, Assistant Federal Public Defender,

21  633 17th Street, 10th Floor, Denver, Colorado, 80202, appearing

22  for the Defendant.

23
                 THERESE LINDBLOM, Official Reporter
24            901 19th Street, Denver, Colorado 80294
           Proceedings Reported by Mechanical Stenography
25             Transcription Produced via Computer
                    **P R O C E E D I N G S**

1

2          (In open court at 2:37 p.m.)

3          *THE COURT:*  We're convened this afternoon in

4   Case No. 16-cr-192, which is encaptioned the United States of

5   America v. Brandon Lafraye Nelson.  The matter is set down for

6   a change in plea.

7          Could I have entries of appearance, please.

8          *MS. GIBSON:*  Good afternoon, Your Honor.  Beth Gibson

9   for the Government.

10         *THE COURT:*  Good afternoon.  Welcome.

11         *MS. STRICKLIN:*  Good afternoon, Your Honor.  Natalie

12  Stricklin on behalf of Mr. Nelson.  He appears in custody

13  seated to my left.

14         *THE COURT:*  Good afternoon and welcome to you, as

15  well.

16         Would you and your client please approach the lectern.

17         *MS. GIBSON:*  Your Honor, may I make an initial

18  statement about the case?

19         *THE COURT:*  Sure.

20         *MS. GIBSON:*  Thank you, Your Honor.

21         The Government's criminal complaint penalty sheet,

22  indictment penalty sheet have all spelled the name as spelled

23  in the caption of the plea agreement.  It would appear that the

24  clerk's office may have entered an E in the defendant's middle

25  name -- they entered an E as an F.  So it appears to be Lafraye

1    in the Court's document, but the name is L-A-D-R-A-Y-E.

2            *THE COURT:*  How is it pronounces?

3            *THE DEFENDANT:*  It's really LAdraye.

4            *THE COURT:*  I'm sorry?

5            *MS. GIBSON:*  I don't know.

6            *THE DEFENDANT:*  There's supposed to be an E where

7    the --

8            *THE COURT:*  Would you please spell your middle name.

9            *THE DEFENDANT:*  Capital L-A, lower case D-R-A-Y-E.

10           *THE COURT:*  Okay.  Thank you.

11           Ms. Glover, I think you probably can clean that up.

12           *COURTROOM DEPUTY:*  Yes, I can go in and fix it.

13           *THE COURT:*  Thank you very much.

14           This matter is before the Court for a change in the

15   defendant's plea, for rearraignment pursuant to Rule 10, and

16   for consideration of and advisement with regard to the parties'

17   plea agreement in accordance with Rule 11.

18           The record reflects that the defendant was first

19   charged in a criminal complaint on May 19, 2016.  He was

20   charged with violation of 18 U.S.C. Section 922(g)(1).  This

21   was superseded by an Indictment filed on June 7, 2016, in which

22   he was charged with the same charge -- and I note in the

23   caption on the Indictment, there is an error in the spelling of

24   the middle name, as well.  There were two counts in the

25   Indictment, both of violation 18 U.S.C. Section 922(g)(1).  It

4

 1   appears that Mr. Nelson has entered a plea of not guilty to the

 2   charges in the Indictment, but I understand that pursuant to

 3   the terms of a written plea agreement, he desires to change his

 4   plea to a plea of guilty to Count 1 in exchange for the

 5   Government's agreement to dismiss Count 2.

 6            is that right?

 7            MS. STRICKLIN:  Yes, Your Honor.

 8            THE COURT:  Would you please rearraign.

 9            MS. GIBSON:  Mr. Nelson, to the Count 1 of the

10   Indictment, charging you with a violation of 18 U.S.C.

11   Section 922(g)(1), felon in possession of a firearm, how do you

12   plead, guilty or not guilty?

13            THE DEFENDANT:  Guilty.

14            THE COURT:  Thank you.  Let me stop at this moment and

15   encourage the parties to make a modification in the spelling of

16   the middle name on the plea agreement, as well.

17            MS. GIBSON:  Your Honor, those changes have been made

18   to the caption, paragraph 1, and signature line.

19            THE COURT:  Thank you very much.

20            And, Ms. Stricklin, has your client had an opportunity

21   to initial those, as well?

22            MS. STRICKLIN:  He has not, but I do have a pen.

23            He has now initialed in the three areas where the name

24   was changed.

25            THE COURT:  Thank you.

1      All right.  Mr. Nelson, as of this moment, you're not

2  bound by your plea of guilty.  Indeed, you're not bound by this

3  plea until I accept it.  You can change your mind at any time

4  during this hearing before I accept your plea.  In order to

5  accept your plea, I have to be sure that you understand the

6  charges that have been brought against you; I have to be

7  certain that you understand your choices and the consequences

8  that flow from those choices; I have to be sure that your

9  decision to plead guilty is voluntary and you haven't been

10  pressured into the decision; I have to be sure that there is a

11  factual basis that supports your plea of guilty.  And because

12  the plea agreement provides for you to give up a number of

13  rights, I have to be sure that you understand those rights and

14  you're knowingly and voluntarily waiving them.

15      Throughout this hearing, please let me know if there

16  is anything you don't understand or if you have any questions.

17  If you want to consult with Ms. Stricklin at any time, just let

18  me know, and we'll take a brief recess so you can confer

19  privately.  I will be asking you a number of questions.

20  They're not intended to trap, insult, embarrass, or offend you.

21  Instead, their purpose is to gather the information that I need

22  to consider in order to determine whether I can accept your

23  plea or not.  Therefore, you must answer my questions

24  truthfully and completely.  Indeed, just like a witness, you

25  take a solemn oath promising to answer my questions truthfully

1    and completely.  If you fail to do so, your answers can be used

2    against you if an action is brought against you for false

3    statement or perjury.

4           Do you understand?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Do you want to proceed?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Would you please administer the oath.

9           (Defendant sworn.)

10          THE COURT:  Mr. Nelson, how old are you?

11          THE DEFENDANT:  27.

12          THE COURT:  What level of school did you complete?

13          THE DEFENDANT:  The eleventh.

14          THE COURT:  Do you have any difficulty reading or

15   writing?

16          THE DEFENDANT:  No.

17          THE COURT:  Within the last 24 hours, have you taken

18   any medication?

19          THE DEFENDANT:  No.

20          THE COURT:  Within the last 24 hours, have you used

21   any drug or alcohol?

22          THE DEFENDANT:  No.

23          THE COURT:  To the best of your knowledge, have you

24   ever been diagnosed or treated for any form of mental illness?

25          THE DEFENDANT:  No.

1          THE COURT:  Is there anything about the way you feel

2     today, physically, mentally, or emotionally, that makes it hard

3     for you to understand what is occurring?

4          THE DEFENDANT:  No.

5          THE COURT:  Do you understand the charges against you

6     in the Indictment?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Have you discussed them with your

9     attorney?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Have you asked her all the questions that

12     you had about them?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Has she answered to your satisfaction?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Are there any questions you want to ask

17     her now?

18          THE DEFENDANT:  No.

19          THE COURT:  Thank you.

20          Ms. Stricklin, could you identify the plea agreement

21     for the record, please.

22          MS. STRICKLIN:  Yes, Your Honor.  The plea agreement

23     is marked as Court's Exhibit 1.

24          THE COURT:  Thank you.

25          Mr. Nelson, would you look at Exhibit 1, please.  Have

1  you read this document?

2          *THE DEFENDANT:*  Yes.

3          *THE COURT:*  Have you discussed it with your attorney?

4          *THE DEFENDANT:*  Yes.

5          *THE COURT:*  Have you asked her all the questions you

6  had about it?

7          *THE DEFENDANT:*  Yes.

8          *THE COURT:*  Has she answered to your satisfaction?

9          *THE DEFENDANT:*  Yes.

10         *THE COURT:*  Are there any other questions you want to

11 ask her?

12         *THE DEFENDANT:*  No.

13         *THE COURT:*  Would you please look at the last page of

14 the document.  Did you sign it?

15         *THE DEFENDANT:*  Yes.

16         *THE COURT:*  Is that your signature there?

17         *THE DEFENDANT:*  Yes.

18         *THE COURT:*  Thank you.

19         Ms. Stricklin, did you have an opportunity to review

20 this document with Mr. Nelson?

21         *MS. STRICKLIN:*  I did, Your Honor.

22         *THE COURT:*  Did you answer all of his questions?

23         *MS. STRICKLIN:*  Yes, Your Honor.

24         *THE COURT:*  Are you satisfied that he understands the

25 contents of this document?

1          MS. STRICKLIN:  Yes, I am.

2          THE COURT:  Did you review all the pertinent

3   discovery?

4          MS. STRICKLIN:  I did.

5          THE COURT:  Does it comport with the facts recited in

6   the plea agreement?

7          MS. STRICKLIN:  It does.

8          THE COURT:  And have you signed this document?

9          MS. STRICKLIN:  I have.

10          THE COURT:  Thank you.

11          Ms. Gibson, have you signed this document,  as well?

12          MS. GIBSON:  I have, Your Honor.

13          THE COURT:  Thank you.

14          Mr. Nelson, I want to draw your attention to a number

15   of provisions in this agreement.  First of all, turn to page 2,

16   subpart C, defendant's waiver of appeal.

17          In this agreement you are stating that you are aware

18   that you have a right to appeal from your sentence, but that

19   you are giving up that right except in three limited

20   circumstances.  You'll only be able to appeal from your

21   sentence if the sentence exceeds the statutory maximum penalty

22   or it exceeds the advisory guideline range that applies to a

23   Total Offense Level of 17 or if the Government appeals from the

24   sentence.

25          You also state here that you recognize that you have a

 1   right to challenge the prosecution, conviction, or sentence by

 2   collateral attack; and you're giving that right up as well,

 3   except in very limited circumstances.  You'll only be able to

 4   bring a collateral attack in a situation where there is an

 5   explicitly retroactive change in the sentencing guidelines or

 6   sentencing statute, in the event you are deprived of the

 7   effective assistance of counsel, or in the event that you've

 8   been prejudiced by prosecutorial misconduct.

 9            Do you understand those rights?

10            THE DEFENDANT:  Yes.

11            THE COURT:  Do you intend to give them up?

12            THE DEFENDANT:  Yes.

13            THE COURT:  Thank you.  I want to draw your attention

14   as well to the stipulation of facts found in Roman numeral V of

15   this document.  Starts on page 5.  There, the pertinent facts

16   are stated.  These are the facts that the Government believes

17   it could prove if the matter were to go to trial.  And by

18   entering into this agreement, you're admitting that these facts

19   are true.  I'll treat them as true for purposes of considering

20   your plea and also for purposes of sentencing.  Therefore, I'm

21   going to ask Ms. Gibson to recite the facts you have agreed to.

22            Listen closely to them, because when she finishes, I'm

23   going to ask you if these facts are true.  If you have any

24   disagreement with the facts as recited by Ms. Gibson, you must

25   say so.

1          Do you understand?

2          *THE DEFENDANT:*  Yes.

3          *THE COURT:*  Thank you.

4          Ms. Gibson, would you recite the facts upon which the

5     parties agree.

6          *MS. GIBSON:*  Yes.  On May 18, 2016, the Denver Police

7     responded to a report that shots were fired at 33rd and Holly

8     in the Park Hill neighborhood in Denver, Colorado.  Eleven

9     minutes later, approximately half a mile away, Officer Marshall

10    saw the defendant in Elk Park Townhomes.  Officer Marshall

11    approached the defendant, who matched the general description

12    of a person who had fired a gun.  The defendant fled on foot.

13    Officer Marshall saw the defendant take a gun from his waist

14    and throw it onto the front porch of a residence.  The

15    defendant fell down and was arrested.

16          Officers immediately went to the porch and recovered a

17    loaded firearm, a Jiminez Arms Model JA 9-millimeter pistol

18    with serial number 296698.  Shell casings that matched the

19    firearm were found in the area of 33rd and Holly.  After his

20    arrest, the defendant was unstable and was taken to the

21    hospital.  While in the cell at jail, the defendant admitted

22    possessing the firearm and denied that he was the person to

23    fire the gun.

24          Before possessing that firearm in 2016, the defendant

25    was convicted of two felony offenses.  In 2011, he was

1   convicted of distribution of a Schedule IV controlled

2   substance.  Approximately nine years ago, in 2007, he was

3   convicted of possession of a weapon by a previous offender.

4            An expert within the ATF determined that the Jiminez

5   Arms firearm and ammunition the defendant possessed traveled

6   into Colorado after it was manufactured outside the state.

7            THE COURT:  Mr. Nelson, are these facts true?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Thank you.

10           Let's talk, then, about the penalty that can be

11  imposed.  For violation of 18 U.S.C. Section 922(g)(1), federal

12  statute provides for a maximum of ten years of imprisonment, a

13  maximum of a $250,000 fine, both can be imposed, a term of

14  imprisonment can be followed by a maximum of three years of

15  supervised release.  There is a $100 special assessment fee.

16           In the federal system, we measure penalties

17  differently than they are measured in the state system.  In the

18  federal system, we measure prison terms in terms of months,

19  there is no automatic reduction, and there is no parole.  That

20  means that every month you're sentenced to serve, you will

21  serve.

22           There are a limited number of ways to reduce a prison

23  sentence.  Some of those you are giving up in this plea

24  agreement.

25           First, one can reduce a prison sentence by a

1    successful motion for reduction based on cooperation with the

2    Government.  This motion is usually brought shortly after

3    judgment is entered.

4          A second way to reduce the sentence is through a

5    successful appeal and resentencing.  But, remember, you gave up

6    your right to appeal except under very limited circumstances.

7          A third way to reduce the sentence is through a

8    successful collateral attack on the prosecution, judgment, or

9    sentence.  But, remember, you're giving up that right in this

10   agreement except under very limited circumstances.

11         And the fourth way to reduce a sentence is through

12   exercise of discretion of the Bureau of Prisons.  And

13   "discretion" is the operative word.  The Bureau of Prisons has

14   the authority and discretion to give you some credit for good

15   time served, but they're not obligated to.  They can give you

16   up to 54 days per year for good time served, but their decision

17   to do that is a function of their assessment and your behavior.

18         Now, a prison term may be followed by a period of

19   supervised release.  And during the period of supervised

20   release -- which can be as long as three years -- you are

21   required to comply by the -- comply with the terms and

22   conditions that are imposed in the judgment.  Those terms and

23   conditions fall roughly into two categories.  The mandatory and

24   standard conditions apply to all terms of supervised release,

25   and those conditions are numerous.  I'm not going to recite all

1    of them, but I'll draw your attention to several.

2             One is that you cannot commit any new crimes, state,

3    federal, or local; another is that you may not use, sell, or

4    possess any illegal substances.

5             And I pause here because it's important to realize

6    that you will not be able to use marijuana.  People who are not

7    serving a sentence can lawfully use marijuana in Colorado, but

8    it is a standard term of supervised release that you will not

9    be able to use marijuana or any derivative.

10            In addition, you will not be able to use, sell, or

11   possess any firearms.

12            Now, there are also a second group of conditions, and

13   these conditions are unique to you and to your particular

14   circumstances.  We call them special conditions; and their

15   purpose is to address issues that you have, with the hope that

16   this will enable you to reintegrate back into society and not

17   commit any more crimes.  What that means is that if you have,

18   for example, an issue with regard to substance abuse, you may

19   be required to go through mandatory substance abuse treatment

20   and successfully complete it; the same is true with alcohol

21   abuse; and the same is true with mental health issues.

22            What's important to know about all of these conditions

23   is that they're not optional; they're mandatory.  You have to

24   comply with all of them all of the time.  It's not good enough

25   to just try; it's not good enough to comply with some but not

1    others.  If you don't comply with all of them all of the time,

2    the Probation Office and the U.S. Attorney may bring you back

3    here to this courtroom or to another courtroom and may ask to

4    have your supervised release period revoked.  If it's revoked,

5    you can be sent back to prison for more time in prison.

6            Now, the statutory penalty, with a maximum of ten

7    years of imprisonment and a $250,000 fine, is the maximum

8    penalty that can be imposed.  But in deciding what penalty is

9    appropriate, I have to look to other statutes and the federal

10   sentencing guidelines.  The overarching statute for sentencing

11   in the federal system is 18 U.S.C. Section 3553.  And it

12   requires me to impose a sentence that is sufficient but no

13   greater than necessary to satisfy particular objectives.  So

14   your sentence, like all other sentences, must promote respect

15   for the law, provide just punishment, adequately deter criminal

16   conduct, protect the public from further crimes by you and

17   provide the defendant -- provide you with needed educational or

18   vocational training, medical care, or other correctional

19   treatment in the most effective manner.

20           Now, in order to craft a sentence that meets those

21   objectives, the same statute tells me what factors to consider:

22   The nature and circumstances of your offense; your history and

23   characteristics; the kinds of sentences that are available;

24   what the federal sentencing guidelines would require; the need

25   to avoid unwarranted sentence disparities among defendants with

1   similar records found guilty of similar conduct; and in the

2   appropriate case, I would consider the need for restitution.

3          In your plea agreement, beginning on page 6, there is

4   at roman numeral VI, a calculation of what the attorneys think

5   will apply under the federal sentencing guidelines.  There are

6   several things that you need to know about this calculation.

7   The first is that it is not a guaranteed sentence; and, indeed,

8   there is no guaranteed sentence.  The second is that this is an

9   estimate based on the attorneys' best information at the time

10  that you entered into this plea agreement.  But at the time of

11  sentencing, we will not be working from this plea agreement;

12  and we may not be working from this calculation.  The document

13  that we will be turning to is called the presentence

14  investigation report.  It's prepared by the probation office of

15  the court.  And it, too, has a calculation under the federal

16  sentencing guidelines.  It is that calculation that we will be

17  working from.  And I will tell you that in my experience, the

18  calculation in the presentence report and the calculation in

19  the plea agreement agree about 50 percent of the time.

20          Now, you and Ms. Stricklin will meet with the

21  probation officer who will prepare this report.  And then after

22  the report is prepared, you'll get an opportunity to look at

23  this report.  And if you think there is a problem with it or

24  any grouping of problems, you can bring those to the attention

25  of the probation officer; and if it's not resolved, then you

1  can raise them at the time of sentencing.

2       The third thing that you need to understand is that

3  the calculation under the federal sentencing guidelines is only

4  one factor that I consider.  It's an important factor, but it's

5  not the only one.  It's a starting point, but sometimes it's

6  not the ending point.  And that's because, as you remember, I

7  have to impose a sentence that comports with the sentencing

8  objectives I mentioned a few minutes ago.  And if the

9  sentencing range under the federal sentencing guidelines

10  doesn't do that, then I can impose what is called a

11  non-guideline sentence.  Now, sometimes people call that a

12  statutory sentence; sometimes they call it a variant sentence;

13  but it all means the same thing.  It's a sentence outside the

14  guideline range; and it can be higher than the guideline range

15  or it can be lower than the guideline range, whatever is

16  necessary in order to satisfy those sentencing objectives.

17       Now, your sentencing hearing will occur a number of

18  weeks from now.  And as I explained, the probation officer will

19  go meet with you and prepare the presentence report.  I don't

20  want there to be any confusion, however.  "Probation officer"

21  is simply the title of the person who is preparing the report;

22  it has nothing to do with the penalty to be imposed.

23       At sentencing, each of the attorneys will have an

24  opportunity to argue as to what the appropriate sentence should

25  be.  You'll have an opportunity to make a statement.  If there

1   are others who want to say something on your behalf, however,

2   they may not do so during the hearing.  They can send a letter

3   to the probation officer who prepared the report.  Not to me,

4   but to the probation officer.  That letter or letters will be

5   attached to either the presentence report or an addendum.  They

6   will be filed in the court record, and they'll be filed under

7   restriction so that the public cannot read what they have to

8   say.

9           Do you understand the factors that I'll be considering

10  in determining your sentence?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do you understand the maximum sentence

13  that can be imposed?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand that the charge you're

16  pleading guilty to is a felony charge?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do you understand that if I accept this

19  plea, it may impact your civil rights, including your right to

20  vote or hold public office, serve on a jury, possess a firearm,

21  or obtain any number of licenses?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you understand that the sentence I

24  impose may be more severe than what is calculated in the plea

25  agreement?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And do you understand that no matter what

3    the sentence ultimately is, if I accept your plea today, you

4    will not be able to withdraw it at the time of sentencing?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you have any questions about

7    sentencing?

8          THE DEFENDANT:  No.

9          THE COURT:  All right.  Let's turn to the statement in

10   advance.

11         Ms. Stricklin, would you identify that.

12         MS. STRICKLIN:  Yes, Your Honor.  The Statement by

13   Defendant in Advance of Guilty Plea is marked as Exhibit 2.  I

14   am now making the correction to Mr. Nelson's middle name, and I

15   will have him initial that correction as well.

16         THE COURT:  Thank you.

17         Mr. Nelson, have you read this document?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Have you discussed it with your attorney?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Have you asked her all the questions you

22   had about it?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Has she answered to your satisfaction?

25         THE DEFENDANT:  Yes.

 1          *THE COURT:*  Are there any other questions you want to

 2     ask her about this document?

 3          *THE DEFENDANT:*  No.

 4          *THE COURT:*  Do you understand its contents?

 5          *THE DEFENDANT:*  Yes.

 6          *THE COURT:*  Thank you.  Then let me review with you

 7     the constitutional rights that you're giving up today by

 8     entering a plea of guilty.

 9          Under the United States Constitution, you have a

10     number of rights; and you are giving up many of those by

11     entering this plea of guilty today.  First and foremost, the

12     Constitution guarantees you that when a charge like this is

13     brought against you, you have a right to have it determined by

14     a jury of your peers at a jury trial.  Now, ordinarily, that

15     jury trial would take place in this courtroom; and the jury

16     would be to my left in the jury box.  Twelve people would be

17     selected to serve on that jury, and you and your attorney and

18     the Government's attorney would participate in the selection of

19     those people.  Both you and the Government could excuse any

20     prospective juror for cause.  That means that the person has

21     such extreme views that he or she cannot be fair and impartial

22     or he or she is unwilling or unable to apply the law.  In

23     addition, there are certain number of jurors that you can

24     excuse without giving any explanation at all.  And the same is

25     true for the Government.

1        Once the jurors have been selected, they all take a

2   solemn oath, promising to consider only the evidence that is

3   presented here in the courtroom and to follow the instructions

4   that I give them as to the law.  One of the instructions that I

5   give them tells them that in order to convict you, they have to

6   reach a unanimous decision based on what they see and hear in

7   the courtroom.

8        If you turn to page 4 of your plea agreement,

9   Exhibit 1, you will see the thee elements that the Government

10  must prove beyond a reasonable doubt in order to convict you.

11  In order to convict you, the jury must agree that the

12  Government has proven each one of these elements beyond a

13  reasonable doubt.  Or put another way, if any one of the twelve

14  jurors has a reasonable doubt as to the proof for any one of

15  these elements, you cannot be convicted.

16        Now, during the trial, you have a right to remain

17  silent.  That means no one can force you to answer questions,

18  to testify, or to make any statement.  More importantly, it

19  means that the jury cannot consider your silence in determining

20  whether the Government has proven these elements beyond a

21  reasonable doubt.  Your attorney can speak for you, ask

22  questions of witnesses, challenge evidence, present evidence,

23  make arguments to the jury, make arguments to me; but because

24  the right to remain silent is a right, you can waive it.  You

25  can change your mind and testify if you'd like, and you can

 1   make that determination before trial or during trial.  You

 2   always have the right to present evidence.  And if there are

 3   witnesses that you would call to testify on your behalf, and

 4   they're reluctant to come forward, I would compel them to

 5   testify.

 6          You also have the right to be represented by counsel.

 7   And when you cannot afford an attorney, one is appointed for

 8   you without any cost to you.  That's the role that

 9   Ms. Stricklin has been playing.  And although she's negotiated

10   this plea agreement for you, I have every confidence that if

11   you would prefer to go to trial, she would represent you ably

12   and well at trial.

13          If you went to trial and you were convicted, you could

14   appeal from your conviction and also from your sentence.  But

15   by pursuing this plea agreement and entering a plea of guilty

16   today, you are giving up your right to appeal from your

17   conviction, and you are also giving up your right to appeal

18   from your sentence except under very limited circumstances.

19          Do you understand that you're waiving your right to a

20   jury trial and other constitutional rights associated with it

21   by making your plea of guilty today?

22          *THE DEFENDANT:*  Yes.

23          *THE COURT:*  Is that what you want to do?

24          *THE DEFENDANT:*  Yes.

25          *THE COURT:*  Where are you being housed?

1          THE DEFENDANT:  Clear Creek.

2          THE COURT:  Have you been treated all right?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Has anybody pressured you to make this

5   plea today?  And before you respond, let me define "anybody"

6   for you.  I really mean the broad scope of anybody.  That

7   includes family, friends, neighbors, business associates; it

8   includes folks here at the courthouse, or law enforcement

9   officers, or people where you're being detained, or the

10  attorneys, or anybody I have not mentioned.  Has anybody

11  pressured you to enter this plea today?

12         THE DEFENDANT:  No.

13         THE COURT:  Have you had enough time to review and

14  consider and discuss your plea and plea agreement with

15  Ms. Stricklin?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Are you satisfied with her representation

18  of you in this case?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Do you have any concerns, complaints, or

21  criticism about her representation?

22         THE DEFENDANT:  No.

23         THE COURT:  Do you want to ask her any questions?

24         THE DEFENDANT:  No.

25         THE COURT:  Do you have any questions for me?

1          THE DEFENDANT:  No.

2          THE COURT:  Well, then, now is the time to finalize

3     your decision.  This plea agreement you and I have been

4     discussing, Exhibit 1, do you still want to proceed with it?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you still want to enter a plea of

7     guilty to violation of 18 U.S.C. Section 922(g)(1)?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Counsel, any reason not to accept the plea

10    or the plea agreement?

11         MS. GIBSON:  No, Your Honor.

12         MS. STRICKLIN:  No, Your Honor.

13         THE COURT:  Thank you.

14         Do either of you desire to supplement the record?

15         MS. GIBSON:  No, Your Honor.

16         MS. STRICKLIN:  No.  Thank you.

17         THE COURT:  Ms. Gibson, this plea agreement

18    anticipates the dismissal of Count 2 in the Indictment.  Are

19    you prepared to make a motion to dismiss at this point?

20         MS. GIBSON:  I am, Your Honor.  The Government moves

21    to dismiss Count 2 of the Indictment.

22         THE COURT:  Thank you.

23         Does the remaining charge reflect the seriousness of

24    the actual offense behavior?

25         MS. GIBSON:  It does.

1      THE COURT:  If I were to accept the agreement, would

2  the statutory purposes of sentencing or sentencing guidelines

3  be undermined in any fashion?

4      MS. GIBSON:  No, Your Honor.

5      THE COURT:  Thank you.

6      Any opposition?

7      MS. STRICKLIN:  No, Your Honor.

8      THE COURT:  Thank you.

9      Then based upon the record made in open court today in

10  Case No. 16-cr-192, in the United States of America v. Brandon

11  LAdraye Nelson, I hereby find that the defendant is fully

12  competent to enter an informed plea; he's been represented

13  through the course of this case; and he has no objection,

14  criticism, or complaint as to the representation he's received;

15  he's aware of the nature of the charges against him and the

16  effects and consequences of his plea of guilty; he has

17  knowingly and voluntarily waived fundamental constitutional

18  rights, including his right to a jury trial; he understands

19  that the penalty imposed by the Court will be based in part on

20  the facts stated in the plea agreement and may exceed that

21  which is recommended in it; his plea of guilty is voluntary and

22  knowingly made; and the charge and plea is supported by an

23  independent basis in fact.

24      The Government has moved to dismiss Count 2 of the

25  Indictment in accordance with the plea agreement, and good

1  cause exists to grant that motion.  The remaining charge, Count

2  1, adequately reflects the seriousness of the actual offense

3  behavior; and the agreement does not undermine the statutory

4  purposes of sentencing.

5          It's therefore ordered that Exhibits 1 and 2 are

6  received.  The plea as made in open court today is accepted,

7  and Mr. Nelson is adjudged guilty as charged in Count 1 of the

8  Indictment.  The motion to dismiss Count 2 is granted; however,

9  the effect of the order is stayed until the time of sentencing.

10  The probation department will conduct a presentence

11  investigation and submit a presentence report as required by

12  Rule 32, and Mr. Nelson with the assistance of counsel will

13  participate in the investigation and cooperate fully with the

14  probation department.

15          Looks like to me that you all have set sentencing in

16  this case for Halloween, October 31, 2016, at 9 o'clock a.m.

17  Still work for everybody?

18          MS. GIBSON:  Yes, Your Honor.

19          MS. STRICKLIN:  Yes, Your Honor.

20          THE COURT:  Does not appear that there are any pending

21  motions.  Have I overlooked anything?

22          MS. STRICKLIN:  You have not.

23          MS. GIBSON:  No, Your Honor.

24          THE COURT:  Okay.  Trial was vacated upon the filing

25  of notice of disposition.  Are there any issues that we need to

```
 1   address with regard to detention?

 2           MS. GIBSON:  No, Your Honor.

 3           MS. STRICKLIN:  No, Your Honor.

 4           THE COURT:  Thank you.

 5           Any further business, then, by the Government or the

 6   defendant?

 7           MS. GIBSON:  No, Your Honor.

 8           MS. STRICKLIN:  No, thank you.

 9           THE COURT:  Thank you, then, counsel; thank you to our

10   marshal staff and our court staff.

11           Mr. Nelson will be remanded to the care of the United

12   States Marshal Service.  That will conclude this matter, and

13   we'll stand in recess.

14           (Recess at 3:15 p.m.)

15

16

17                       REPORTER'S CERTIFICATE

18           I certify that the foregoing is a correct transcript
     from the record of proceedings in the above-entitled matter.
19
             Dated at Denver, Colorado, this 2nd day of August,
20   2019.

21

22                            _Therese Lindblom_

23                            _____
                              Therese Lindblom,CSR,RMR,CRR
24

25
```

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 16-cr-00192-MSK-1

UNITED STATES OF AMERICA,

       Plaintiff,

v.

BRANDON LADRAYE NELSON,

       Defendant.

---

## MOTION FOR RULING

---

Defendant Brandon Lafraye Nelson, through counsel, respectfully requests a ruling on his Amended Motion to Vacate Conviction and Sentence under U.S.C. § 2255. In support, counsel states:

1.     Mr. Nelson filed his amended § 2255 motion on September 10, 2019. More than 10 months have now passed without a ruling from this Court.

2.     Mr. Nelson's motion challenges his 18 U.S.C. § 922(g) conviction under *Rehaif v. United States,* 139 S. Ct. 2191 (2019). The § 922(g) conviction is the only conviction Mr. Nelson suffered in this case, so a ruling in his favor would vacate his only conviction here. Also, although Mr. Nelson has completed his prison sentence, he is still serving the term of supervised release that was imposed. A ruling in his favor could result in the elimination or shortening of that term. For these reasons, the delay in ruling on Mr. Nelson's motion is prejudicial to him.

Wherefore, Mr. Nelson respectfully requests a ruling on his § 2255 motion.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


/s/ Dean Sanderford
DEAN SANDERFORD
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, Colorado  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Email:  Dean_Sanderford@fd.org
Attorney for Defendant

2

## CERTIFICATE OF SERVICE

I certify that on July 22, 2020, I electronically filed the foregoing *Motion for Ruling* with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email address:

Beth Gibson, Assistant U.S. Attorney
Email:  beth.gibson@usdoj.gov


/s/ Dean Sanderford
DEAN SANDERFORD
Assistant Federal Public Defender
Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Crim. No. 1:16-cr-00192-MSK-1

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,

vs.

BRANDON LADRAYE NELSON,

      Defendant-Movant.

---

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO VACATE CONVICTION AND SENTENCE UNDER 28 U.S.C. § 2255

      Pursuant to this court's order (#54), the United States responds to defendant's amended motion to vacate his conviction and sentence under 28 U.S.C. § 2255 (#39).[1] The defendant maintains his conviction should be vacated based upon the Supreme Court's decision in *Rehaif v. United States*, 139 S.Ct. 2191 (2019). For reasons stated below, the United States asks that defendant's motion be denied.

## Background

      On July 26, 2016, the defendant pleaded guilty to Count One of an Indictment charging him with being a previously convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). In consideration, the government agreed to make

---

[1] The amended motion (#39) appears to be identical to the original motion (#38), except for the attachment of the plea hearing transcript.

favorable sentence recommendations and to move to dismiss Count Two, charging the defendant with being a felon in possession of ammunition. Doc. 24 at 1-2.[2]

In the plea agreement, the parties stipulated that on May 18, 2016, Denver Police responded to a report that shots were fired at 33rd and Holly in the Park Hill neighborhood of Denver. Eleven minutes later, approximately half a mile away, Officer Marshal saw the defendant in the Elm Park Townhomes. Officer Marshal approached the defendant, who matched the general description of the person who had fired a gun. The defendant fled on foot. Officer Marshal saw the defendant pull a gun from his waist and throw it onto the front porch of a residence. The defendant fell down and was arrested. Officers immediately went to the porch and recovered the loaded firearm, a Jimenez Arms, model J.A. None, 9mm pistol, serial # 296698. Shell casings that match the firearm were found in the area of 33rd and Holly. After his arrest, the defendant was unstable and was taken to the hospital. While in jail, the defendant admitted possessing the firearm, but denied that he was the person who fired the gun.

Before possessing that firearm in 2016, the defendant was convicted of two adult felony offenses. In 2011, he was convicted of distribution of a schedule IV controlled substance. In 2007, he was convicted of possession of a weapon by a previous offender. Doc. 24 at 5-6. In addition, the defendant suffered three felony convictions, for theft and controlled substance offenses, as a juvenile. Doc. 34-1 at 4. This court found the advisory guideline range to be 46-57 months, based upon a criminal history

---

[2] Citations are to the District Court Docket.

2

category (CHC) of V and an offense level of 17. *Id.* at 7. The court sentenced the defendant to 51 months' imprisonment. *Id.* at 11.

## Timeliness

Title 28, U.S.C. § 2255(f)(1) requires in most cases that a motion be filed within one year of the date on which the judgment of conviction becomes final. Final judgment entered in this court on November 4, 2016. *See* doc. 34 (entry date from docket sheet). Because the defendant did not take a direct appeal, his conviction became final, under § 2255(f)(1), fourteen days after judgment was entered. *See United States v. Burch*, 202 F.3d 1274, 1277 (10th Cir. 2000). Defendant's conviction was thus final on November 18, 2016. *See* Fed. R. App. P. 4(b)(1)(A). The defendant's § 2255 motion (#38) and amended motion (#39) were both filed September 10, 2019, and are untimely under § 2255(f)(1).

However, under § 2255(f)(3), the one year limitations period runs from the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Court and made retroactively applicable to cases on collateral review. The decision upon which defendant relies, *Rehaif v. United States*, 139 S.Ct. 2191 (2019), was handed down on June 21, 2019. Defendant's § 2255 motion is thus timely under § 2255(f)(3). Pursuant to Rule 5(b) of the Rules Governing § 2255 Proceedings, the United States informs the court that the defendant has not filed any other post-conviction motions attacking his conviction or sentence.

## Argument

In *Rehaif*, the Court held that in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S.Ct. at 2200. The second clause – requiring proof a defendant knows of his status – imposes a new burden upon the government in prosecutions under § 922(g). The defendant argues that he was not informed of this element of the offense at the time he entered his guilty plea, that his plea is therefore constitutionally invalid, and that his conviction should be vacated.

### *The Plea Agreement Waiver and Retroactivity*

The defendant's plea agreement contained a limited waiver of his right to challenge his conviction in a collateral attack under 28 U.S.C. § 2255. Doc. 67 at 3. However, the government will not argue that this § 2255 motion is barred by the waiver.

In *Rehaif* the Court interpreted the reach of 18 U.S.C. § 924(a)(2), thereby announcing a new rule of statutory law. New substantive rules are generally retroactive to cases on collateral review. A substantive rule is one that "alters the range of conduct or the class of persons that the law punishes." *See Schriro v. Summerlin*, 542 U.S. 348, 353 (2004); *United States v. Chang Hong*, 671 F.3d 1147, 1157 (10th Cir. 2011). *Rehaif* limits the class of persons that the law punishes under § 922(g) and § 924(a)(2). *Cf. Welch v. United States*, 136 S.Ct. 1257, 1267 (2016). Thus, the government concedes that *Rehaif* is retroactive to cases on collateral review, at least where review is pursuant to a first motion under § 2255.

4

*Mr. Nelson's Challenge to His Guilty Plea*

The defendant argues that a plea of guilty is not voluntarily and intelligently made, when a defendant is misinformed of the elements of the statute under which he is prosecuted – even when this is due to a subsequent change in the law. *See Bousley v. United States*, 523 U.S. 614, 618-20 (1998). However, the Supreme Court has held:

> We have strictly limited the circumstances under which a guilty plea may be attacked on collateral review. "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, (1984). And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. Habeas review is an extraordinary remedy and " 'will not be allowed to do service for an appeal.' " *Reed v. Farley*, 512 U.S. 339, 354 (1994) (quoting *Sunal v. Large*, 332 U.S. 174, 178 (1947)). Indeed, "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784 (1979).

*Bousley*, 523 U.S. at 621 (citation form shortened).

In *Bousley*, the petitioner had appealed on other grounds, but did not challenge the validity of his plea. The Court held that by failing to do so, the petitioner procedurally defaulted his claim that a subsequent change in a statute's interpretation rendered his plea unintelligent and involuntary. *Id.* Here, Mr. Nelson has not shown that he objected to the advisement at his plea hearing or otherwise argued – either before, at, or after the Rule 11 hearing – that the government was required to prove his knowledge of his "status" as a convicted felon. Nor did Mr. Nelson pursue a direct appeal of this issue. Hence, for the reasons stated by the Court in *Bousley*, Mr. Nelson has procedurally defaulted his claim. *See also Massaro v. United States*, 538 U.S. 500, 504 (2003) (as a "general rule," claims not raised below or on direct appeal may not be raised on

5

collateral review); *Wainwright v. S*ykes, 433 U.S. 72, 85-86 (1977) (claim defaulted when no contemporaneous objection was lodged at trial); *Murray v. Carrier*, 477 U.S. 478, 490-492 (1986) (claim not raised on direct appeal is procedurally defaulted).

A defendant may overcome procedural default, but he has the burden of showing both "cause" for the default and "actual prejudice" from the asserted *Rehaif* error, or that he is actually innocent. *See Bousley,* 523 U.S. at 622. Mr. Nelson has not attempted to satisfy these burdens.[3]

At the time the defendant entered his plea, precedent in the Tenth Circuit foreclosed the position taken by the Supreme Court in *Rehaif*. But the futility of an objection does not excuse, in this context, a failure to make such an objection. The Supreme Court in *Bousley* held that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time," *id.* at 623, with only a narrow exception for a hypothetical "claim that 'is so novel that its legal basis is not reasonably available to counsel.'" *Id.* at 622-623 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). The claim that § 922(g) requires knowledge of status was not a novel one at the time of defendant's plea. To the contrary, as with the issue in *Bousley*, "the Federal Reporters were replete with cases" addressing that claim. *Cf. id.* at 622; *see, e.g.*, *United States v. Capps*, 77 F.3d 350, 352 (10th Cir. 1996); *United States v.*

---

[3] Other cases relied upon by Mr. Nelson are not on point as to this issue. The decisions in *Henderson v. Morgan*, 426 U.S. 637 (1976) and *Hicks v. Franklin*, 546 F.3d 1279 (2008) did not involve procedural default. Defendants in those cases had exhausted state remedies before filing habeas petitions in federal court. And the decision in *United States v. Dominguez Benitez*, 542 U.S. 74 (2004), concerned an alleged error in Rule 11 advisements, not a procedurally defaulted unintelligent guilty plea.

6

*Langley*, 62 F.3d 602, 604-05 (4th Cir. 1995); *United States v. Olender*, 338 F.3d 629, 637 (6th Cir. 2003). Although most courts had rejected the claim, this does not constitute cause. *Bousley*, 523 U.S. at 623; *United States v. Powell*, 159 F.3d 500, 502 (10th Cir. 1998) ("[T]he mere fact that [a new Supreme Court case] may have altered the settled law of most circuits . . . did not make the argument so novel as to constitute cause"). And this issue is discussed in detail in *United States v. Games-Perez*, 667 F.3d 1136, 1140-41 (10th Cir. 2012). In a concurrence, then-Judge Gorsuch advanced the very argument later adopted in *Rehaif* and asserted by Mr. Nelson here. *Id.* at 1142-46.

Mr. Nelson also has not shown actual prejudice. The standard for "actual prejudice" is "a significantly higher hurdle" than the standard for harmless error, or even plain error, that applies on direct appeal. *United States v. Frady*, 456 U.S. 152, 166-67 (1982). To show "actual prejudice," a defendant must show that the claimed error worked to his actual and substantial disadvantage. *Id.* at 170. But Mr. Nelson has not asserted that he lacked knowledge of his status, arguing rather that the record does not contain *an admission by him* that he had knowledge of his status. That argument does not satisfy his burden. To the contrary, the record shows that the defendant knew of his status, because he had a prior conviction for being a previous offender in possession of a weapon.

It is a defendant's burden, in the alternative, to make a threshold showing of "actual innocence." *See Bousley*, 523 U.S. at 623 (remanding "to permit petitioner to attempt to make a showing of actual innocence"); *Smith v. Murray*, 477 U.S. 527, 537 (1986). This requires the defendant to show that it was "more likely than not that no

reasonable juror would have convicted him" had the district court correctly instructed the jury and given the government the opportunity to produce evidence of the omitted status element. *Schlup v. Delo*, 513 U.S. 298, 327-328 (1995). Mr. Nelson repeatedly argues that the record does not contain evidence of the additional element required by *Rehaif*. The jury instructions did not of course require such proof at trial. It might be said of every defendant convicted prior to *Rehaif,* that he/she has not been found guilty of the Section 922(g) offense as it is now understood, but the Supreme Court made clear in *Bousley* that "'actual innocence' means factual innocence, not mere legal insufficiency." 523 U.S. at 623. Mr. Nelson has not made such a showing.

### Any Error Is Harmless and Mr. Nelson Has Not Shown
### He Would Not Have Entered His Plea

Even if Mr. Nelson could overcome his procedural default, he would not be entitled to relief because any *Rehaif* error here is harmless.  The harmlessness inquiry is "more forgiving" on collateral review than it is on direct appeal.  *Frye v. Pliler*, 551 U.S. 112, 116 (2007).  In the § 2255 context, an error is usually considered harmless unless it had a "substantial and injurious effect" on the outcome of the case.  *Brecht v. Abramson*, 507 U.S. 619, 637-38 (1993); *United States v. Dago*, 441 F.3d 1238, 1245 (10th Cir. 2006). The Tenth Circuit was recently presented with a *Rehaif* issue on direct appeal. There, like here, the defendant had not objected in district court at the time of the plea. The Tenth Circuit held under plain error review that the "Defendant must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Trujillo*, 960 F.3d 1196, 1208 (10th Cir. 2020), citing *Dominguez Benitez*, 542 U.S. at 83.

8

Mr. Nelson has not met either standard. He has a lengthy criminal history and numerous felony convictions. One of those felony convictions was for possession of a weapon by a previous offender. The defendant has no plausible claim that he lacked knowledge of his status. At trial, the government would not be required to "introduce any extraordinary evidence that would conclusively demonstrate petitioner's state of mind," but as in any prosecution the government would seek to prove defendant's mental state by reference to all facts and circumstances surrounding the case. *See, e.g., Liparota v. United States*, 471 U.S. 419, 434 (1985).

Defendant's knowledge would be a fact question for the jury to decide. In the instant plea agreement, the defendant stipulated that he had been convicted of a crime punishable by imprisonment for a term exceeding one year. Doc. 24 at 4. And his prior conviction for possession of a weapon by a previous offender is conclusive evidence that he knew of this status. The defendant plead guilty to this charge, *see* doc. 33 at 9, from which it necessarily follows that the defendant knew he was not allowed to possess a weapon because of previous offenses. In addition, defendant's prior felony convictions would easily support a jury finding that the defendant knew of his status. Had the defendant proceeded to trial and not stipulated that he knew of his status, the government would have been entitled to introduce evidence of his prior convictions in order to satisfy its burden of proof. The circumstances of this offense also support an inference that the defendant knew he was not allowed to possess a weapon, *i.e.*, when pursued by police he drew the gun from his waist and tried to throw it away from himself. Given these circumstances, there is no reasonable probability that Mr. Nelson

9

would not have entered a guilty plea if the government had been required to prove his knowledge of his status.

## Conclusion

For the reasons set forth above, the defendant's motion under 28 U.S.C. § 2255 should be denied.

Respectfully Submitted,

JASON R. DUNN
United States Attorney

s/ *James C. Murphy*
James C. Murphy
Assistant U.S. Attorney
1801 California, Suite 1600
Denver, Colorado  80202
(303) 454-0100

USACO.ECFAppellate@usdoj.gov;
James.Murphy3@usdoj.gov

10

## <u>UNITED STATES DISTRICT COURT</u>
## <u>FOR THE DISTRICT OF COLORADO</u>
## <u>CERTIFICATE OF SERVICE (CM/Colorado)</u>

       I hereby certify that on December 4, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

                     /s/Erin Prall
                     ERIN PRALL
                     U.S. Attorney's Office

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Jennifer Lynn Beck (co.ecf@fd.org, jennifer_beck@fd.org,
sonja_beamon@fd.org), Beth N. Gibson (beth.gibson@usdoj.gov, caseview.ecf@usdoj.gov,
stephanie.price1@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Martha Ann Paluch
(caseview.ecf@usdoj.gov, martha.paluch@usdoj.gov, usaco.ecfcriminal@usdoj.gov,
veronica.ortiz@usdoj.gov), Alecia Lynne Riewerts (alecia.riewerts@usdoj.gov,
caseview.ecf@usdoj.gov, portia.peter@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Oliver Dean
Sanderford (cecilia_hernandez@fd.org, co.ecf@fd.org, dean_sanderford@fd.org), Natalie
Girard Stricklin (co.ecf@fd.org, mary_unrein@fd.org, natalie_stricklin@fd.org), Judge R.
Brooke Jackson (jackson_chambers@cod.uscourts.gov)
--Non Case Participants: James Coyle Murphy (james.murphy3@usdoj.gov,
usaco.ecfappellate@usdoj.gov), jkoza (justine_kozak@cod.uscourts.gov), lansa
(laura_ansart@cod.uscourts.gov), shartz (stephanie_hartz@cod.uscourts.gov),
Probation-General (cod_efiling@cod.uscourts.gov), USM-Criminal Division
(gregorio.rivera@usdoj.gov, jason.brackett@usdoj.gov, justin.kellogg@usdoj.gov,
katrina.crouse@usdoj.gov, royce.namoca@usdoj.gov, usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:7703243@cod.uscourts.gov
Subject:Activity in Case 1:16-cr-00192-RBJ USA v. Nelson Minute Order
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 8/12/2020 at 1:01 PM MDT and filed on 8/12/2020

| | |
|---|---|
| **Case Name:** | USA v. Nelson |
| **Case Number:** | 1:16–cr–00192–RBJ |
| **Filer:** | |
| **Document Number:** | 60(No document attached) |

**Docket Text:**
 **MINUTE ORDER as to Brandon LAdraye Nelson Re: [39] Amended Motion to Reduce Sentence pursuant to Rehaif v. United States and [44] MOTION for Order for Ruling. ECF No. 39 is denied. As the government has pointed out in its response, the motion was procedurally defaulted. Moreover, the defendant stipulated that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, ECF No. 24 at 4. Accordingly, it is clear that the defendant did know that he was not allowed to possess firearms because of his previous conviction(s). ECF No. 44 is denied as moot. By Judge R. Brooke Jackson on 8/12/2020. Text Only Entry (rbjsec,)**

**1:16–cr–00192–RBJ–1 Notice has been electronically mailed to:**

Martha Ann Paluch (Terminated)     Martha.paluch@usdoj.gov, CaseView.ECF@usdoj.gov, usaco.ecfcriminal@usdoj.gov, veronica.ortiz@usdoj.gov

Oliver Dean Sanderford     Dean_Sanderford@fd.org, cecilia_hernandez@fd.org, co.ecf@fd.org

Alecia Lynne Riewerts     Alecia.Riewerts@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, portia.peter@usdoj.gov

Beth N. Gibson (Terminated)     Beth.Gibson@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, stephanie.price1@usdoj.gov

Natalie Girard Stricklin     natalie_stricklin@fd.org, co.ecf@fd.org, mary_unrein@fd.org

Jennifer Lynn Beck     jennifer_beck@fd.org, Sonja_Beamon@fd.org, co.ecf@fd.org

**1:16‑cr‑00192‑RBJ‑1 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 16-cr-00192-RBJ

UNITED STATES OF AMERICA,

       Plaintiff,

v.

BRANDON LAFRAYE NELSON,

       Defendant.

---

## DEFENDANT'S MOTION FOR RECONSIDERATION OF
## ORDER DENYING 28 U.S.C. § 2255 MOTION

---

Contrary to Rule 5(d) of the Rules Governing Section 2255 Proceedings, this Court denied Mr. Nelson's amended motion to vacate his conviction without affording him the requisite opportunity to file a reply. This Court should reconsider and vacate its order, and dispose of the motion to vacate after considering Mr. Nelson's reply, filed separately today.

Mr. Nelson filed his amended section 2255 motion on September 10, 2019. Doc. 39. Over ten months later, on July 20, 2020, this Court ordered the government to respond by August 13, 2020. Doc. 54. The government filed its response on August 11, 2020. Doc. 58. On the very next day, August 12, 2020, this Court denied Mr. Nelson's section 2255 motion by minute order. Doc. 60.

Rule 5(d) of the Rules Governing Section 2255 Proceedings provides that "[t]he moving party may file a reply to the respondent's answer or other pleading." The advisory committee notes make clear that this means "[t]he moving party has a *right* to file a reply." Section 2255 Rule 5(d), note to 2019 amend. (emphasis added). The notes go on to say that subsection (d) was

added to "remove[] the discretion of the court to determine whether or not to allow the moving party to file a reply in a case under § 2255." *Id.*

Rule 5(d) also says "[t]he judge must set the time to file unless the time is already set by local rule." If this court's local civil rules apply, they allow 14 days for the filing of a reply. D.C. Colo. L. Civ. R. 7.1(d). This Court entered its order denying Mr. Nelson's section 2255 motion 13 days before that deadline passed. If the court's local criminal rules apply, those rules do not appear to set a deadline for replies. So in that case, this Court should have set a deadline for Mr. Nelson's reply, which it did not do.

Reconsideration is warranted to correct this Court's "clear error" in not following Rule 5(d). *United States v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015).

Reconsideration is also warranted for reasons of basic fairness. This Court denied Mr. Nelson's section 2255 motion in part because, as the government argued in its response, Mr. Nelson procedurally defaulted on his claim. But Mr. Nelson will argue in his reply that the default should be excused because he can show cause and prejudice. This is not an argument that Mr. Nelson should have made in his section 2255 motion. Procedural default is an "affirmative defense," *Gray v. Netherland*, 518 U.S. 152, 165 (1996), meaning that the government "is obligated to raise [it] as a defense or lose the right to assert the defense thereafter," *McCormick v. Parker*, 821 F.3d 1240, 1245 (10th Cir. 2016). For that reason, Mr. Nelson "was under no obligation to address the default until the [government] raised the issue in its response." *Fairchild v. Workman*, 579 F.3d 1134, 1141 n.2 (10th Cir. 2009). By ruling on the section 2255 motion before affording Mr. Nelson the requisite opportunity to file a reply, this Court deprived him of his right to respond to the government's assertion of procedural default as a basis to deny the motion.

2

This Court also cited Mr. Nelson's stipulation, in his guilty plea, that he had been convicted of a crime punishable by more than one year in prison as a reason to deny his section 2255 motion. But as will be explained in Mr. Nelson's reply, that conclusion was also marred by "clear error." *Huff*, 782 F.3d at 1224. For the element recognized in *Rehaif* to be satisfied, there must be evidence that Mr. Nelson was aware that he had been convicted of such a crime at the time "*he possessed*" the gun. *Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019). The fact that Mr. Nelson understood he had a qualifying conviction when he pled guilty does not show he possessed that knowledge at the time of the offense. His guilty plea happened months later, and critically, after his lawyer had surely explained to him that he had a conviction that prohibited him from possessing a gun under 18 U.S.C. § 922(g)(1).

Counsel for the government, Assistant United States Attorney James C. Murphy, has informed undersigned counsel that he does not oppose this Court allowing Mr. Nelson to file a reply.

For these reasons, this Court should reconsider and vacate its order denying Mr. Nelson's section 2255 motion, and dispose of the motion to vacate after considering Mr. Nelson's reply.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


/s/ Dean Sanderford
DEAN SANDERFORD
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, Colorado 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Email: Dean_Sanderford@fd.org
Attorney for Defendant

3

# CERTIFICATE OF SERVICE

I certify that on August 13, 2020, I electronically filed the foregoing ***Defendant's Unopposed Motion for Reconsideration of Order Denying 28 U.S.C. § 2255 Motion*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

James C. Murphy, Assistant U.S. Attorney
Email:  James.Murphy3@usdoj.gov

Alecia L. Riewerts, Assistant U.S. Attorney
Email:  alecia.riewerts@usdoj.gov

/s/ Dean Sanderford
DEAN SANDERFORD
Assistant Federal Public Defender
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 16-cr-192-RBJ-1

UNITED STATES OF AMERICA,

       Plaintiff,

v.

BRANDON LAFRAYE NELSON,

       Defendant.

_____

### REPLY TO UNITED STATES'S RESPONSE TO MOTION TO VACATE CONVICTION AND SENTENCE UNDER 28 U.S.C. § 2255

_____

The government's response (doc. 58) does not contest that Mr. Nelson's guilty plea to violating 18 U.S.C. § 922(g)(1) is constitutionally invalid because he was not advised of the element recognized by *Rehaif v. United States*, 139 S. Ct. 2191 (2019). Moreover, the government concedes (at 3-4) that Mr. Nelson's 28 U.S.C. § 2255 motion is timely and that *Rehaif* applies retroactively to his case. The government also declines to seek enforcement of the collateral attack waiver in Mr. Nelson's plea agreement, an argument that in any event would be foreclosed by *United States v. Rollings*, 751 F.3d 1183, 1189 (10th Cir. 2014).

Instead, the government contends that this Court should not remedy the clear constitutional infirmity in Mr. Nelson's guilty plea because he procedurally defaulted on the claim by not raising it earlier. This Court should reject that argument. Although Mr. Nelson's

*Rehaif* claim is procedurally defaulted, that default should be excused because, as explained below, he can show the requisite cause and prejudice.[1]

## I.        Mr. Nelson can show both cause and prejudice.

A section 2255 movant can raise a procedurally defaulted claim if he shows one of two things: (1) cause and prejudice, or (2) actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Here, Mr. Nelson can show cause and prejudice and so does not need to demonstrate actual innocence.

### A.        Cause

A movant can show cause by demonstrating that the "legal basis" for the claim was not "reasonably available to counsel" at the time of the default. *Bousley*, 523 U.S. at 622 (quoting *Ross*, 468 U.S. at 16). While the Supreme Court has not given the term cause "precise content," it has identified two situations representing "a clear break from the past" in which a claim will always be deemed reasonably unavailable for purposes of showing cause. *Ross*, 468 U.S. at 13, 16. The first is when the Supreme Court "explicitly overrule[s]" one of its own precedents. *Id.* at 16. The second is when the Court "overturn[s] a longstanding and widespread practice to which" the Court had not spoken, "but which a near-unanimous body of lower court authority ha[d] expressly approved." *Id.* The Tenth Circuit recently held that the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which struck down the Armed Career Criminal Act's residual clause, fell within the first *Ross* category and thus constituted the

---

[1] The government incorrectly suggests (at 6) Mr. Nelson should have argued cause and prejudice in his initial section 2255 motion. Because procedural default is an affirmative defense, Mr. Nelson "was under no obligation to address the default until the [government] raised the issue in its response." *Fairchild v. Workman*, 579 F.3d 1134, 1141 n.2 (10th Cir. 2009).

sort of clear break with the past that demonstrates cause. *United States v. Snyder*, 871 F.3d 1122, 1127 (10th Cir. 2017). *Rehaif* falls into the second category.

As Justice Alito noted in his dissent, *Rehaif*, 139 S. Ct. at 2210 & n.6 (Alito, J., dissenting), all ten of the federal appellate courts that addressed the issue before *Rehaif*, including the Tenth Circuit, had held that § 922(g) did not require proof that the defendant knew of his prohibited status. *See United States v. Smith*, 940 F.2d 710, 713 (1st Cir. 1991); *United States v. Huet*, 665 F.3d 588, 596 (3d Cir. 2012); *United States v. Langley*, 62 F.3d 602, 604-608 (4th Cir. 1995); *United States v. Dancy*, 861 F.2d 77, 80-82 (5th Cir. 1988); *United States v. Lane*, 267 F.3d 715, 720 (7th Cir. 2001); *United States v. Kind*, 194 F.3d 900, 907 (8th Cir. 1999); *United States v. Miller*, 105 F.3d 552, 555 (9th Cir. 1997); *United States v. Capps*, 77 F.3d 350, 352-354 (10th Cir. 1996); *United States v. Jackson*, 120 F.3d 1226, 1229 (11th Cir. 1997); *United States v. Bryant*, 523 F.3d 349, 354 (D.C. Cir. 2008). This consensus among the lower courts more than suffices to show the "longstanding and widespread practice" described by *Ross*. *See MacArthur v. United States*, No. 1:12-cr-00084, 2020 WL 1670369, at *9 (D. Me. Apr. 3, 2020); *United States v. Dillard*, No. 09-cr-57, 2020 WL 2199614, at*5 (D. Nev. May 6, 2020).

This Court should reject the government's argument to the contrary. It is true that cause does not exist whenever a defaulted claim was merely "unacceptable to that particular court at that particular time." *Bousley*, 523 U.S. at 623. But Mr. Nelson's claim was not merely unacceptable according to the law of the Tenth Circuit at the time he was convicted. It was unacceptable according to all ten of the circuits that had addressed the question over the prior three decades. This "longstanding," "widespread," and unanimous body of lower court authority foreclosing Mr. Nelson's claim, *Reed*, 468 U.S. at 17, distinguishes his defaulted claim from the

one at issue *Bousley*—with respect to which the courts of appeal had been "in conflict." *Bailey v. United States*, 516 U.S. 137, 142 (1995).

The government's argument (at 7) that then-Judge Gorsuch's concurrence in *United States v. Games-Perez*, 667 F.3d 1136 (10th Cir. 2012), precludes a finding of cause fares no better. A claim is not "reasonably available to counsel" so that a finding of cause is foreclosed merely because it has been set out in a non-precedential, non-majority opinion that posits a legal theory that is in open conflict with governing law. To the contrary, the Tenth Circuit has squarely held that cause excused a defendant's "fail[ure] to raise" the claim that the residual clause of the Armed Career Criminal Act was unconstitutionally vague, see *United States v. Snyder*, 871 F.3d 1122, 1127 (10th Cir. 2017) (citing *Reed*, 468 U.S. at 17), notwithstanding the fact that Justice Scalia's dissents in cases like *Sykes v. United States*, 564 U.S. 1 (2011), provided a clear roadmap for the claim years before it was ultimately adopted in *Johnson v. United States*, 135 S. Ct. 2551 (2015).

The same reasoning applies here. In light of longstanding, widespread, and unanimous precedent holding that knowledge of prohibited status was not an element of § 922(g), cause excuses Mr. Nelson's prior failure to raise that claim, notwithstanding then-Judge Gorsuch's concurrence in *Games-Perez*.

## B.     Prejudice

Mr. Nelson can also show actual prejudice sufficient to overcome the procedural default. As an initial matter, the government is wrong that the applicable prejudice standard in this context is more stringent than the "reasonable probability" test that applies in evaluating prejudice on plain error review in a direct appeal. In fact, the Supreme Court has held that the same "reasonable probability" test that applies on plain error review also applies when

4

evaluating prejudice under the cause and prejudice standard. *Strickler v. Greene*, 527 U.S. 263, 289-91 (1999).

In his section 2255 motion, Mr. Nelson argued that under *Henderson v. Morgan*, 426 U.S. 637 (1976), the prejudice inquiry centers on whether the element missing from the plea was otherwise explained to the defendant or whether he admitted to the facts that establish the element. The government does not (and could not) contend that the defect in Mr. Nelson's plea was harmless under this standard. Instead, it argues (at 6 n.3) that *Henderson* is inapposite because, while it was a habeas case, it did not involve a procedural default and therefore did not address whether the defendant had shown "actual prejudice."

This is a distinction without a difference. It is true that *Henderson* applied the harmless-beyond-reasonable-doubt standard for prejudice, whereas the actual prejudice standard requires application of the reasonable-probability standard. *Compare Henderson*, 426 U.S. at 647, *with Strickler*, 527 U.S. at 289-91. But this difference goes only to the *standard of proof* for showing prejudice, not to the *nature* of the prejudice inquiry. In other words, the difference does not relate to the substance of what constitutes prejudice, but to the level of certainty a court must have that prejudice occurred. A good analogy is to the distinction between clear and convincing evidence and proof beyond a reasonable doubt. What must be proven is the same under either standard. It is just that the proof needs to be more compelling under the latter.

The Tenth Circuit's rejection of a *Henderson*-based argument in *United States v. Trujillo*, 960 F.3d 1196 (10th Cir. 2020), is not dispositive. In that case, the circuit held that *Henderson* did not support the notion that *Rehaif* error constitutes "structural error" requiring "automatic reversal." *Id.* at 1202-03. In so holding, the circuit noted that *Henderson* itself applies harmless

error review.  Mr. Nelson is not arguing that *Rehaif* error is structural.  Instead, he is asking this Court to conduct the inquiry into prejudice that the Supreme Court undertook in *Henderson*.

In any event, Mr. Nelson can also show prejudice under a standard focused on whether the error may have affected the outcome.  To do this, he "must show a reasonable probability that, but for the error, he would not have entered the plea."  *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).   Mr. Nelson can meet that standard, one that requires less proof than even a preponderance of the evidence that he would have gone to trial had he been informed of the missing element.  *See United States v. Benford*, 875 F.3d 1007, 1017 (10th Cir. 2017). Mr. Nelson may well have taken his chances at trial because he would have rightly judged that it would have been difficult for the government to prove beyond a reasonable doubt that he knew at the time he possessed the gun that he had been convicted of a crime punishable by more than one year in prison.

To begin with, contrary to the conclusion this Court reached in its August 12 minute order (doc. 60), Mr. Nelson's stipulation as part of his guilty plea that he had been convicted of a crime punishable by more than one year in prison does not establish the *Rehaif* element.  For the element to be met, there must be evidence that Mr. Nelson was aware that he had been convicted of such a crime at the time "*he possessed*" the gun.  *Rehaif*, 139 S. Ct. at 2194 (emphasis added). The fact that Mr. Nelson understood he had a qualifying conviction when he pled guilty does not show he possessed that knowledge at the time of the offense.  His guilty plea happened months later, and critically, after his lawyer had surely explained to him that he had a conviction that prohibited him from possessing a gun under section 922(g)(1).

Moreover, none of Mr. Nelson's prior felony adjudications clearly put him on notice that he had been convicted of a crime punishable by more than one year in prison.

6

Three of Mr. Nelson's prior felonies are Colorado adjudications of juvenile delinquency. Doc. 30 at 5-6. These adjudications do not even count as qualifying "conviction[s]" under section 922(g). For purposes of the chapter in which section 922(g) is located, "[w]hat constitutes a conviction of [a crime punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20). And under Colorado law, an adjudication of juvenile delinquency does not amount to a conviction. *See S.G.W. v. People*, 752 P.2d 86, 91 (Colo. 1988) ("Except in those limited circumstances in which a child under the age of eighteen years of age may be prosecuted as an adult, a child who is adjudicated a delinquent under the Colorado Children's Code stands before the juvenile court not as a convicted criminal but as a child in need of reformation."); *Apodaca v. People*, 712 P.2d 467, 471 n.5 (Colo. 1985) ("A delinquency proceeding is not a criminal prosecution, and a delinquency adjudication does not constitute a felony conviction.").

Mr. Nelson has two adult felony convictions, and the first is for possessing a weapon as a previous offender under Colo. Rev. Stat. § 18-12-108. Doc. 30 at 8. The earlier offenses that barred him from possessing a firearm under that statute were clearly the juvenile adjudications discussed above. Section 18-12-108's prohibition on firearm possession covers people who have been "adjudicate[ed] for an act which, if committed by an adult, would constitute a felony, or subsequent to the person's adjudication for attempt or conspiracy to commit a felony, under Colorado or any other state's law or under federal law." § 18-12-108(3). And aside from the juvenile adjudication, Mr. Nelson did not have any convictions that would have disqualified him from possessing a weapon under the Colorado statute.

7

Because Mr. Nelson was barred from possessing a firearm under section 18-12-108 only because of an adjudication of juvenile delinquency, the fact that he was convicted for violating that statute would not have put him on notice that he possessed the status that a section 922(g)(1) conviction requires. While it would have put him on notice that he was prohibited from possessing a firearm under Colorado law, that is not the question under *Rehaif* and section 922(g)(1). The additional element under *Rehaif* is not whether the defendant knew he was prohibited from possessing a firearm, but whether he "knew he belonged to the relevant category of persons barred from possessing a firearm" *under section 922(g)*. *Rehaif*, 139 S. Ct. at 2200. Here, the relevant category is persons who have "been convicted in any court of a crime punishable by imprisonment for a term exceeding one year." § 922(g)(1). Mr. Nelson's Colorado conviction did not put him on notice that he possessed that status. Not only does the Colorado statute also prohibit the possession of a firearm by a person who has been adjudicated delinquent, but Mr. Nelson was actually convicted under that statute based on such an adjudication.

Finally, Mr. Nelson would not necessarily have known that his adult Colorado conviction of possessing a weapon as a previous juvenile offender placed him in the category of people convicted of a crime punishable by more than one year in prison. That is because of the sentence he received. For that crime, he was initially sentenced only to probation. Doc. 30 at 8. The Supreme Court itself observed in *Rehaif* that a defendant sentenced to probation may not have known that his offense was punishable by more than one year in prison. 139 S. Ct. at 2198. And although his probation was later revoked, he served only seven months of the one-year sentence imposed before being paroled. Doc. 30 at 8.

On his only other felony conviction, for a Colorado drug crime, Mr. Nelson received only a sentence of probation. Doc. 30 at 12. For the reasons just discussed, that conviction also did not put him on notice that he had been convicted of a crime punishable by more than one year in prison.

Given all this, the government may have been hard pressed to show that Mr. Nelson knew, at the time he possessed the firearm in this case, that he had been convicted of a crime "punishable by imprisonment for a term exceeding one year." § 922(g)(1). Because of the evidentiary difficulties the government would have faced on the newly recognized element, there is at least a "reasonable probability" that Mr. Nelson would have put the government to its proof had he been aware of the element's existence. *Dominguez Benitez*, 542 U.S. at 83.

This Court should vacate Mr. Nelson's conviction for violating section 922(g)(1).


Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

/s/ Dean Sanderford
DEAN SANDERFORD
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, Colorado 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Email: Dean_Sanderford@fd.org
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2020, I electronically filed the foregoing **Reply to United States's Response to Motion to Vacate Conviction and Sentence Under 28 U.S.C. § 2255** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

    James C. Murphy, Assistant U.S. Attorney
    Email:  James.Murphy3@usdoj.gov

    Alecia L. Riewerts, Assistant U.S. Attorney
    Email:  alecia.riewerts@usdoj.gov


                /s/ Dean Sanderford
                DEAN SANDERFORD
                Assistant Federal Public Defender
                Attorney for Defendant

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Natalie Girard Stricklin (co.ecf@fd.org, mary_unrein@fd.org,
natalie_stricklin@fd.org), Alecia Lynne Riewerts (alecia.riewerts@usdoj.gov,
caseview.ecf@usdoj.gov, portia.peter@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Oliver Dean
Sanderford (cecilia_hernandez@fd.org, co.ecf@fd.org, dean_sanderford@fd.org), Judge R.
Brooke Jackson (jackson_chambers@cod.uscourts.gov)
--Non Case Participants: lansa (laura_ansart@cod.uscourts.gov), James Coyle Murphy
(james.murphy3@usdoj.gov, usaco.ecfappellate@usdoj.gov), jkoza
(justine_kozak@cod.uscourts.gov), shartz (stephanie_hartz@cod.uscourts.gov),
Probation-General (cod_efiling@cod.uscourts.gov)
--No Notice Sent:

Message-Id:7754429@cod.uscourts.gov
Subject:Activity in Case 1:16-cr-00192-RBJ USA v. Nelson Order on Motion for
Reconsideration
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 9/14/2020 at 2:14 PM MDT and filed on 9/14/2020

| | |
|---|---|
| **Case Name:** | USA v. Nelson |
| **Case Number:** | 1:16–cr–00192–RBJ |
| **Filer:** | |
| **Document Number:** | 66(No document attached) |

**Docket Text:**
 **ORDER granting in part and denying in part [62] MOTION for Reconsideration of Order Denying 28 U.S.C. § 2255 Motion as to Brandon LAdraye Nelson (1). Granted to the extent that the Court has reviewed defendant's reply and has reconsidered. Otherwise, denied. The Court reaffirms its denial of defendant's amended motion to reduce sentence, ECF No. 39, for the reasons summarized in the Courts Minute Order, ECF No. 60. By Judge R. Brooke Jackson on 9/14/202. Text Only Entry (rbjsec. )**


**1:16–cr–00192–RBJ–1 Notice has been electronically mailed to:**

Oliver Dean Sanderford     Dean_Sanderford@fd.org, cecilia_hernandez@fd.org, co.ecf@fd.org

Alecia Lynne Riewerts     Alecia.Riewerts@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, portia.peter@usdoj.gov

Natalie Girard Stricklin     natalie_stricklin@fd.org, co.ecf@fd.org, mary_unrein@fd.org

**1:16–cr–00192–RBJ–1 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 16-cr-00192-RBJ

UNITED STATES OF AMERICA,

        Plaintiff,

v.

BRANDON LAFRAYE NELSON,

        Defendant.

---

## NOTICE OF APPEAL

---

Defendant, Brandon Lafraye Nelson, through counsel, notifies this Court that he wishes to appeal from the August 12, 2020, denial of his 28 U.S.C. § 2255 motion (doc. 60), and the September 14, 2020, partial denial of his motion for reconsideration (doc. 66) to the Tenth Circuit.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

/s/ Dean Sanderford
DEAN SANDERFORD
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO 80202
Telephone: (303) 294-7002
Fax: (303) 294-1192
Email: Dean_Sanderford@fd.org
Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify that on October 1, 2020, I electronically filed the foregoing *Notice of Appeal* with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email address:

Alecia L. Riewerts, Assistant U.S. Attorney
Email: alecia.riewerts@usdoj.gov

/s/ Dean Sanderford
DEAN SANDERFORD
Assistant Federal Public Defender